(No. 33951.—

THOMAS W. BURROWS II *et al.*, Appellants, *vs.* BURTON
W. PALMER, Appellee.

*Opinion filed Sept. 25, 1956—Rehearing denied March 19, 1957.*

POOL & LANGER, of Ottawa, and BERRY & O'CONOR, of Streator, for appellants.

ALFRED ROY HULBERT, of Chicago, for appellee.

Mr. JUSTICE BRISTOW delivered the opinion of the court:

Plaintiffs and a counterclaimant appeal directly to this court from a decree of the circuit court of La Salle County dismissing for want of equity plaintiffs' complaint and

defendant Margaret Burrow's counterclaim wherein it is prayed that the defendant Burton W. Palmer be decreed to hold title to certain real estate in trust and for other relief.

A freehold being directly in issue, the appeal properly comes directly to this court.

The complaint in substance alleges that Mary F. Palmer, mother of the defendant, Burton W. Palmer, and of the counterclaimant Margaret Burrows, during her lifetime conveyed two apartment buildings to the defendant, Burton W. Palmer, without consideration and for her use and benefit; that a confidential and fiduciary relationship then existed between Mary F. Palmer and her son, Burton W. Palmer; that Burton W. Palmer never reconveyed the title to the buildings to Mary F. Palmer during her lifetime and held the title thereto in trust for her at her death. The suit was instituted by the eight minor children of Margaret Burrows, defendant-counterclaimant, as contingent remaindermen under a testamentary trust created by the last will of Mary F. Palmer, their grandmother. That they were proper parties plaintiffs and have a right to maintain this suit was decided by this court in *Burrows* v. *Palmer*, 5 Ill.2d 434, on appeal from an earlier order dismissing their complaint for want of proper parties.

The answer of defendant Burton W. Palmer denied the material allegations of the complaint, alleged his purchase of the properties for a valuable consideration, and also pleaded *laches* and the statute of limitations as special defenses.

Witnesses called for the plaintiffs were their mother, Margaret Burrows; Dr. Samuel J. Burrows, their father and next friend who instituted the suit; Helen Palmer, wife of the defendant Burton W. Palmer at the time of title transfer but since divorced from him; Fred A. Gerding, president of a bank holding a first mortgage on the property at the time of transfer; John W. Meagher, a

realtor; and the defendant, Burton W. Palmer, under section 60 of the Civil Practice Act. Voluminous documentary evidence was also introduced in evidence by plaintiffs.

Defendant called as witnesses in his behalf Thomas Emmett White, the attorney who handled the transactions in question; and Charles H. Eichelkraut, a contractor, appraiser and president of the First Federal Building and Loan Association which made a first mortgage loan on the property shortly after the transaction in question.

The trial court in its opinion found no trust to exist and no *laches* on the part of plaintiffs, and dismissed the complaint and counterclaim.

An examination of the testimony and documentary evidence reveals in substance the following facts. Prior to 1927 Mary F. Palmer and her husband owned three adjacent apartment buildings in Ottawa but lived in another city. The buildings were commonly known as the Palm, the Palmer, and the Palmetto Apartments. On December 10, 1927, Mary F. Palmer and her husband deeded the Palmetto Apartment building to Burton W. Palmer, defendant herein, as a gift, the title to which is not involved in this litigation. On the death of the father, title to the Palm and the Palmer passed to Mary F. Palmer. During all of this time Burton W. Palmer actively managed all of the properties, renting the apartments, paying the bills and expenses and handling all matters concerning them.

At the time of death of the father in 1932 the three apartment buildings were subject to a first mortgage to the First National Bank of Ottawa, Illinois, as trustee, securing the payment of $55,000. The notes were then due and payable and the holders of the notes wanted payment, but Mary F. Palmer was unable to pay on account of then existing financial conditions. Finally the notes were extended for five years. When the notes again were approaching maturity, the First National Bank of Ottawa, the only remaining bank in the city, was unwilling to nego-

tiate a new loan with Mary F. Palmer. She was a widow, 58 or 59 years old. The president of the bank testified that he and other bank officers did not believe her to be a good risk because she had no other income and that the holders of the notes would not renew them again. At that time there was a principal balance due of $49,000.

On April 27, 1936, Mary F. Palmer conveyed the Palmer and the Palm apartment buildings to the defendant, Burton W. Palmer. The determining issue of this case is whether such conveyance was absolute or in trust.

The only testimony in the record concerning the details of this transaction is that of Thomas Emmett White, a lawyer of approximately 35 years experience in the practice of law. He was acquainted with Mary F. Palmer and her husband before he died. He was attorney for the First Federal Savings and Loan Association of Ottawa and prepared the warranty deed in question, loan papers for a $49,000 loan to Burton W. Palmer thereon, and examined the abstract of title. He prepared the deed in question about the date it bears, called Mary F. Palmer and told her to come to the office for he had the papers prepared for her. She came to his office alone on the morning of October 27, 1936, and he had a conversation with her concerning the deed. She executed it in his presence, he acknowledged it, and gave it back to her, telling her that he would get the stamps and drop in at noon and give them to her. He lived in the same apartment building right across the hall from her. White took the revenue stamps to her and she affixed them to the deed and endorsed them in his presence. She was mentally alert at the time and the substance of White's conversation was that the loan was ready for closing, that she understood that she was conveying the property to Burton, and that she signed the deed. When the loan papers were completed, he would clean up the loan with the bank, which would take considerable time because the notes were scattered. When in

shape, Burton was to execute his note for $15,000 to Mary F. Palmer. The notes were not then available, which he explained to her, and as fast as they came in they would pay them. She understood it, it was agreeable to her, her mortgage was to be liquidated, and she was to take a note for $15,000.

A few days after Mary F. Palmer signed the deed, Samuel J. Burrows and his wife, Margaret Burrows, went to White's office and executed a quitclaim deed of the same property to Burton W. Palmer. White testified that he prepared these deeds and that they were ready when Dr. and Mrs. Burrows came in together to sign them. White told them that Mrs. Palmer had sold the property to Burton, that Burton was getting a loan on it from the Building and Loan Association, that their mother had executed a deed, and that to be sure they understood it he had a deed for them he wished they would execute. He told them that Burton was the grantee and Mr. and Mrs. Burrows signed the deed, his secretary acknowledged it, and he kept it and recorded it the same day. Burton Palmer was not present in White's office at the time either of the deeds was signed.

White testified that at the time Mrs. Palmer was signing the deed he told her that when the action was completed she would no longer have any interest in the property and she said that was the way she wanted it and understood it. He also testified that he never prepared a deed or knew of the preparation or execution of a deed from Burton W. Palmer and his wife back to Mary F. Palmer for this property, either at that time or any other time, and no such deed was mentioned in his conversation with these people.

On July 27, 1940, Mary F. Palmer had White prepare her will and it was executed in the presence of White and two other people.

Eichelkraut testified on behalf of Burton W. Palmer

that he made an appraisal of the buildings in question in connection with an application for loan to Palmer. After describing in some detail his method of arriving at his appraisal he testified that the value of the Palmer Apartment in 1936 was $29,874 after depreciation, and approximately $39,000 before depreciation; that the value of the Palm Apartment, which cost $38,645 to build in 1925, was $21,449.25 in 1936 after depreciation, or $27,000 before. In both valuations land was figured at $12,000 total for the two. The values testified were not from records maintained by the witness but were computations made in 1954 from building association records as to cubical content and nature of the buildings.

On March 6, 1943, Mary F. Palmer died, her estate was closed April 10, 1944, and the present complaint was filed November 9, 1953. The will of Mary F. Palmer devised certain real estate in fee to Burton W. Palmer, bequeathed jewelry and personal effects to certain persons, $5000 to Margaret Burrows, and all the residue to Margaret Burrows and Burton W. Palmer in trust to collect the income to pay costs and expenses, including outlays necessary for the protection, management, upkeep, repairs, alterations, improvements, interest on encumbrances, taxes, insurance and care of the trust estate, and to pay the net income to Agnes Palmer during her lifetime. Upon the death of Agnes Palmer the trust was to terminate and the trustees were to transfer and pay over the estate two thirds to Margaret Burrows, or if she be not then living, to the heirs of her body and one third to Burton W. Palmer if then living, otherwise to his wife, Helen Palmer, if living, otherwise to heirs of the body of Burton Palmer, and if none to the children of Margaret Burrows, share and share alike. The will contained a direction to the trustees that so long as title to the Palmer Apartments remained in Burton Palmer they were to invest so far as possible the

principal of the trust in either first or second mortgages thereon.

At the time of the execution of the deeds in question Mary F. Palmer was living in an apartment in one of the buildings and continued to live there rent free until her death.

The inventory filed in the estate of Mary F. Palmer, in addition to certain real estate not here involved, cash, war bonds and jewelry, listed two notes executed by Burton W. Palmer on September 14, 1940, due 10 years after date in the principal amount of $7500 each, secured by a trust deed on the Palmer and Palm apartment properties. The final account in the estate shows a payment of $738.56 on the notes, distribution in kind of notes in the amount of $5000 to Margaret Burrows in satisfaction of her specific bequest and the balance of the notes inventoried in the amount of $9261.44 to the trustees in kind. The latter note was paid in full with interest by Burton W. Palmer to Margaret Burrows on July 27, 1953.

Helen Palmer, former wife of the defendant, Burton Palmer, testified in substance that Burton paid nothing to his father and mother for the deed to the Palmetto in 1927, that at the time of the 1936 transaction Burton had informed her his mother was deeding the property to him so he could secure a loan, that when she signed the mortgage paper in White's office she signed a deed reconveying the property to Mary F. Palmer and that Burton also signed the deed at the same time, that up until July 25, 1940, she had signed no notes for $15,000 to Mary F. Palmer or mortgages securing the same. She did not know whether the deed was ever delivered, and neither Burton nor Mary F. Palmer ever said anything about it to her. She had never said anything to anyone about the deed back to Mary F. Palmer until about ten days before the hearing.

Dr. Samuel J. Burrows, the husband of Margaret Burrows, and father of the minor plaintiffs and next friend, testified that he had no knowledge about the business affairs of the Palmers or the Mary F. Palmer estate but that he did have a conversation with the defendant, Burton W. Palmer, in the spring of 1949 after Burton had obtained a divorce from his wife, Helen Palmer. The conversation occurred in an automobile in Ottawa with Margaret Burrows, Samuel J. Burrows' wife, present. At that time a point-blank request was made by Samuel J. Burrows of Burton Palmer to make a prenuptial agreement in reference to the Palm and Palmer apartments before Burton Palmer got married a second time. Burton Palmer at that time replied that he would not make a prenuptial agreement because the property was his and he was going to handle it as he saw fit. Samuel J. Burrows did acknowledge the execution of the deed by him and his wife on April 27, 1936. He also testified, after testimony as to his qualifications, that in his opinion the Palmer Apartments and the Palm Apartments on April 27, 1936, had a minimum total value of $125,000.

Margaret Burrows was called by plaintiffs under section 60 of the Civil Practice Act and testified in substance that there had never been any disagreement within the family prior to this lawsuit; that she knew nothing about business matters; that Burton W. Palmer never discussed any business affairs with her concerning the Palmer properties; that she had received a letter from her mother shortly after January 15, 1935, in which her mother stated that she was going to give Margaret an interest in the buildings; that there was no money but it would give her a feeling of having something and that they felt if they could struggle a little longer conditions would improve. She also testified to a conversation with Burton W. Palmer, her brother, in 1946 in which family matters and family property were discussed and he said that she had a nice

interest in the property or he thought she did. She also testified as to the conversation between her husband, Dr. Burrows, Burton Palmer and herself in the spring of 1949 in which Burton refused to make a prenuptial agreement and told them that the buildings were his. She also acknowledged her signature on the deed dated October 27, 1936, but did not remember any of the details and did not know what the document was at the time.

John J. Meagher, a realtor in Ottawa for more than twenty-five years, also testified that in his opinion the fair cash market value on April 27, 1936, of the Palmer Apartment was $75,000 and of the Palm Apartment was $50,000. Such witness did not recall having bought or sold any buildings such as those in the city of Ottawa but testified that the biggest part of his work was in buying and selling farms.

The substance of appellants' argument is that the defendant, Burton W. Palmer, at the time of the conveyance in issue occupied a fiduciary relationship to his mother, Mary F. Palmer, the grantor; that it is presumed that the conveyance was obtained by the fraud and undue influence of Burton W. Palmer; that no evidence was produced by the defendant, Burton W. Palmer, to rebut such presumption; that no consideration was paid for the conveyance by Burton W. Palmer; and that the court was in error in not declaring the property conveyed to Burton W. Palmer to be part of the trust corpus under the will of Mary F. Palmer.

The evidence in the case clearly demonstrates and the defendant, Burton W. Palmer, in fact concedes that as a matter of law and fact he was acting as an agent for and occupying a fiduciary relationship with his mother on October 27, 1936, the date of the conveyance in question.

It is well established by the decisions of this court that where a fiduciary relationship exists at the time of a transaction whereby the dominant party appears to gain, the

transaction is deemed presumptively fraudulent but such presumption is not conclusive and may be rebutted by clear and convincing proof that the dominant party has exercised good faith and has not betrayed the confidence reposed in him. The burden rests upon the dominant party to produce such evidence and if the burden is not discharged the transaction will be set aside in equity. In general, to overcome this presumption of fraud and undue influence the dominant party must show: (1) full disclosure of all relevant information to the subservient party; (2) adequate consideration; (3) competent and independent advice to the principal before completing the transaction. *Works* v. *McNeil,* 1 Ill.2d 47; *Bremer* v. *Bremer,* 411 Ill. 454; *Dombrow* v. *Dombrow,* 401 Ill. 324; *Krieg* v. *Felgner,* 400 Ill. 113; *Clark* v. *Clark,* 398 Ill. 592.

In the instant case the burden shifted to the defendant, Burton W. Palmer, to establish by clear and convincing evidence that the transaction was free of fraud and undue influence on his part since the fiduciary relationship between him and his mother as of the date of conveyance was established.

He did produce and present to the court the only competent independent and unbiased testimony as to the transaction in issue which was then available to him in the form of the testimony of the attorney who handled the transaction and the appraiser who appraised the buildings at the time of obtaining the loan concurrently with the transaction. The trial court apparently placed great credibility on the testimony of these two witnesses. The attorney who testified was one of extensive experience who positively testified that he explained to Burton W. Palmer's mother the nature of the transaction, that she was deeding the property to her son, would have no further interest therein, that the notes on which she was liable would be discharged by her son and that in addition thereto the son would give her a note for $15,000 secured by a second mortgage on the premises in

addition to discharging her personal liability on the existing mortgage. The appraiser testified that the total value of the premises at that time before depreciation was approximately $66,000 and after depreciation a little over $51,000. The evidence clearly shows that Burton W. Palmer discharged the personal liability of his mother on the mortgage notes in the amount of $49,000 and paid her or her estate an additional $15,000 making a total consideration paid by him for the deed of $64,000. In addition it is clearly shown that the mother of Burton W. Palmer continued to reside in one of the apartments, rent free, the remainder of her lifetime. Furthermore, Burton W. Palmer's mother, in her last will and testament, expressly directed her testamentary trustees to invest the trust principal in first or second mortgages in the Palmer Apartments as long as title thereto remained in her son, Burton. Such provision clearly indicates that at the time of execution of her will she was clearly aware and cognizant of the fact that she had theretofore conveyed the property to her son and that he then owned it.

Much is made of the fact by appellants that the defendant, Burton Palmer, was not called upon to take the witness stand in his own behalf. Although the previously stated rule placed the burden upon the defendant, Burton Palmer, to prove the lack of fraud or undue influence on his part by clear and convincing evidence, we know of no rule of law which requires that such evidence must include the testimony of the defendant, himself. In fact, the defendant was called to the witness stand by the plaintiffs under section 60 of the Civil Practice Act and the doors were wide open to the plaintiffs for a complete examination of him as to his knowledge of any and all facts important to the issues in the case. Although the burden of proceeding with evidence to overcome the presumption of fraud or undue influence rests with the defendant, yet, the burden is upon the plaintiffs once that presumption is overcome to prove

by a preponderance of the evidence that there was fraud, misrepresentation or undue influence. (*Maley* v. *Burns,* 6 Ill.2d 11; *Paluszek* v. *Wohlrab,* 1 Ill.2d 363; *Kolze* v. *Fordtran,* 412 Ill. 461; *McCabe* v. *Hebner,* 410 Ill. 557.) The trial court who heard and observed the testimony and demeanor of all witnesses apparently felt that the presumption of fraud and undue influence on the part of Burton W. Palmer was overcome by the clear and convincing testimony of the defendant's witnesses. There is no affirmative evidence in the record of fraud, misrepresentation or undue influence or overreaching on the part of Burton W. Palmer. It is a well established and fundamental principle followed by reviewing courts that the findings and decree of the trial court, who has had the opportunity to personally observe and hear the witnesses, will not be disturbed or reversed unless clearly contrary to the manifest weight of the evidence. Considering the fact that the principal witnesses for the plaintiffs were the plaintiffs' father and mother and the former wife of the defendant, and that the witnesses for the defendant were completely disinterested and highly reputable and creditable citizens of the community, we cannot say that the trial court's conclusion was contrary to the manifest weight of the evidence or that the trial court was in error in concluding that the defendant, Burton W. Palmer, had overcome the presumption of fraud and undue influence arising from his confidential relationship with his mother by clear and convincing proof. This is particularly true when this court takes judicial notice of the distressed financial conditions at the time in question and that many substantial properties subject to large mortgages were in distressed condition and a practically nonexistent market therefor existed in many cases. The fact that at the present time a period of relative prosperity is being enjoyed throughout the country and most properties have greatly increased in value and productivity in the past twenty years, does not in and of itself justify this court

in setting aside or voiding transactions made and entered into many years ago under terms and conditions which were then fair, reasonable and understood by all parties to this transaction.

The decree of the trial court is affirmed.

*Decree affirmed.*