(No. 36161.

GRACE HOFERT *et al.*, Appellees, *vs.* PETER LATORRI *et al.*, Appellants.

*Opinion filed April 26, 1961.—Rehearing denied June 13, 1961.*

Herrick, Vette, McNeill & McElroy, of Chicago, (Moore W. Peregrine, and William T. McNeill, of counsel,) for appellants.

John E. Golden, of Chicago, (John T. Mehigan, of counsel,) for appellees.

Mr. Chief Justice Schaefer delivered the opinion of the court:

The plaintiffs, Grace Hofert and Elizabeth Salamone, brought this action against their brother, Peter Latorri, and his wife, Eleanor, to impose a constructive trust upon real estate conveyed by their mother and father to the defendants as joint tenants. The defendants declined to offer any proof before the master in chancery, and moved for a finding in their favor at the close of the plaintiffs' case. The master found the issues for the plaintiffs and the court entered a decree declaring that the defendants hold title to the property as trustees for the benefit of all of the heirs of Filippo Latorri, the father of the plaintiffs and of the defendant Peter Latorri. The decree also ordered the execution of deeds, partition and an accounting. A freehold is involved and the defendants have appealed directly to this court.

The property in question is a two-flat building in Chicago. It was purchased by Filippo Latorri and his wife, Felicia, in joint tenancy, in 1923. On April 21, 1956, they executed a warranty deed conveying the property to the defendants. After the deed was executed, they continued to

occupy the first floor apartment and Filippo continued to collect the rent and pay taxes and other expenses. Felicia died on November 27, 1957. Filippo remained there until the end of the year, when he moved to Peter's home. Thereafter Peter collected the rent for him. Filippo died intestate on May 27, 1958, leaving the plaintiffs and their brother, the defendant Peter Latorri, as his only heirs-at-law.

The plaintiffs' position is that a confidential relationship existed which gave rise to a constructive trust, while the defendants contend both that no confidential relationship was proved, and that the property was to be held by them in trust for their son Phillip.

Peter Latorri, called as an adverse witness, testified that his son, Phillip, stayed with Filippo and Felicia during school vacations and that Filippo had repeatedly said that the property would some day go to Phillip because "he was the only one carrying the name." In March of 1956, Filippo, who was 77 years old, suffered a stroke. Peter testified that Filippo then told him that he wanted to do something with the property; that he was "the boss," it was up to him to do what he wanted with it. "He wanted my son to have it, what should be done. I said all I could do was see a lawyer."

Peter then went to the building and loan association that held a mortgage on property that he owned. They recommended a lawyer who told him that his son, who was 17, was too young and suggested that title should be put in the name of Peter and his wife, "and then see that it goes to your son." The lawyer prepared a deed which Peter took to his parents. "I told them that I had the papers from the lawyer and it was up to them to sign them. They had to be signed in front of a notary public." Thereafter he drove his parents to the office of his automobile insurance agent, who was a notary, gave him the papers, "and he read them and he read them to my dad. My dad said 'That's it.'" Peter then returned the deed to the lawyer, who recorded it.

Peter also testified that about two months before Filippo died, he expressed a fear that the plaintiffs were going to "make trouble" for Peter and that "these papers that were made out wouldn't hold," and asked "how about a will?" Peter testified that he called the same lawyer, who said, "All right, I will write it up and mail it to you." The will which Peter testified was prepared in accordance with these instructions, was received in evidence. It was typed on a printed form, and it left "all of my estate, of any kind and description, real, personal and mixed, and wheresoever situated, unto my son, Peter Latorri. My daughters, Elizabeth Salamone and Grace Hofert, are to receive nothing and I hereby expressly disinherit and exclude them from the provisions of my will."

Peter testified that the lawyer told him to have his father's physician come over and examine him before the will was executed, and that the doctor did so, and said there was nothing wrong with him. The will was never signed by Filippo. According to Peter, the doctor refused to witness it, because "according to law [it] should give at least $1.00 to each of the girls" and because "it was going against his patient Grace" and he did not want to get involved in "family trouble."

Grace Hofert and Elizabeth Salamone testified that Filippo had opened a savings account in the name of his grandson Phillip in 1952, which totalled nearly $4,000 when Filippo died, and that their parents told them that this was done because Phillip was named for Filippo but that "being an outsider * * * he don't come in on the house." Grace also testified that after her mother's death, she had conversations with her father about the property in which he told her that "I couldn't leave three in charge, if I left three in charge your sister won't get nothing, you won't get nothing, and the brother won't get nothing, so Peter is the oldest and he is in charge." He also told her that with Peter "in charge," they would not have to "go to court and have all

the other expense" and that "Pete knows all about it, he will give you and your sister each your share" and "save cost." She testified that Peter was present at two of these conversations, but she did not recall whether or not he said anything at the time. Elizabeth testified that she was present at several of these conversations and corroborated her sister's testimony. A cousin of Filippo's testified that several days before his death, he told her that he did not need a will because Peter "is taking care of things" and "he will take care of the two sisters." A neighbor testified that in 1957 Filippo told her that "when me and my wife die, we will leave [the property] to these three kids."

The defendants argue that because the conveyance ran from father to son it should be presumed to be a gift. But the conveyance ran not only to Peter but to his wife as well, and it is not suggested that the law would presume a gift to her. Nor could a gift to Peter's son, Phillip, be presumed from an outright conveyance to his father and mother. Moreover, this contention that a gift to Peter should be presumed entirely disregards Peter's own testimony, which expressly negatived any possibility that the conveyance could have been intended as a gift to him.

The principles that govern this case are familiar. A constructive trust is imposed by a court of equity to prevent unjust enrichment. (Restatement of Restitution, § 183.) Such a trust arises when a fiduciary or confidential relationship has been established by clear and convincing evidence. And when such a relationship has been established, "the law presumes that any transactions between the parties, by which the dominant party has profited, is fraudulent. This presumption is not conclusive, but may be rebutted by clear and convincing proof that the dominant party has exercised good faith and has not betrayed the confidence reposed in him. The burden rests upon the dominant party to produce such evidence, and if the burden is not discharged the transaction will be set aside in equity." *Bremer* v. *Bremer*, 411

Ill. 454, 457-8. See also *Burrows* v. *Palmer,* 10 Ill.2d 344; *Kester* v. *Crilly,* 405 Ill. 425.

We are of the opinion that the master and the trial court properly found that a confidential relationship existed between Filippo and his son Peter when the property was conveyed in 1956. It is apparent that Filippo was anxious to avoid probate of his estate. (See Restatement of Restitution, § 183.) There is direct testimony to that effect, and the testamentary flavor of the transaction is also indicated by the fact that he continued, after the deed was executed, to receive the rents from the property and to provide the funds for the payment of taxes and other expenses. Over the years the father had constantly consulted his son about "what repairs had to be done to the house, who had to do them." He was 77 years old at the time of the conveyance and had suffered at least one stroke. Those were the circumstances that existed when he turned to his son for advice as to what should be done with the property, and they point clearly to the existence of a confidential relationship.

Other evidence admitted over the objection of the defendants, points to the same conclusion. What is at issue in determining whether a confidential or fiduciary relationship exists, for the purpose of establishing a constructive trust, is the state of mind of the grantor. What is required is clear and convincing evidence that he reposed trust and confidence in the grantee. That state of mind, like any other, can be shown circumstantially. The defendants objected to the admission of evidence that Filippo turned over his bank account to his son with directions to use it to pay the father's bills and to divide the balance with his sisters. That evidence, however, was admissible to show the father's mental attitude toward his son. Unmistakably it established that a confidential relationship existed in September of 1957, when the bank account was transferred. It is true that there was a lapse of time between the conveyance and the transfer of the bank account, but there is no suggestion

of any change in the relations between the two during that interval. We are therefore of the opinion that the lapse of time, while it bore upon the weight to be given to the inference of a continuing frame of mind, was not sufficient to justify exclusion of the evidence.

The defendants made no effort to rebut the presumption of fraud and undue influence that arose from the proof that a confidential relationship existed and that the dominant party had gained from the transaction. (See *Burrows* v. *Palmer*, 10 Ill.2d 344. ) There was no showing of adequate consideration, and no suggestion that the grantor had received any independent advice. The lawyer who drafted the deed and the unexecuted will was not called as a witness, nor was the notary public or the doctor. The circuit court properly held that the defendants had not discharged the burden that rested upon them, and its decree is affirmed.

*Decree affirmed.*