Mary Rendl, Plaintiff-Appellant, Counterdefendant, v. Roy E. Anderson, Individually, and d/b/a Home Owners Realty, and Charles E. Neal, Defendants-Appellees, Counterplaintiffs.

Gen. No. 68–13.

Second Judicial District.

December 13, 1968.

255

Jurco, Damisch & Sinson, of Chicago, and Geister, Schnell, Richards & Brown, of Elgin, for appellant.

No brief filed in behalf of appellee.

MR. JUSTICE SEIDENFELD delivered the opinion of the court.

The plaintiff, the owner of a certain farm, brought suit against the defendants, both real estate brokers, for money damages, based upon slander of title; and for a judgment declaring that an option to purchase given to the real estate broker, which contained an exclusive brokerage listing executed between the plaintiff and one defendant, be declared illegal and void and set aside as a cloud upon her title. The defendants, the real estate brokers, brought suit for specific performance, demanding that the plaintiff-owner perform the option in the brokerage listing agreement and deliver to the defendants a deed to said property pursuant to the brokerage

listing agreement. The cases were consolidated for trial, jury was waived, and the court entered two judgment orders.

The court entered judgment for the defendants in the plaintiff's case against the real estate brokers. In the suit by the real estate brokers against the plaintiff-owner, the court ordered the plaintiff to comply with the terms of the option contained in the brokerage listing contract, and to execute a deed, among other things, to the defendants. It is from both judgment orders that the plaintiff appeals.

The plaintiff contends that the option in the brokerage listing was fraudulent and unenforceable because Anderson did not make full disclosure of all relevant facts to the plaintiff and that the plaintiff did not receive competent independent advice prior to execution of the contract; that the option was unenforceable because there was no valid consideration; and that the terms of the option were so vague and indefinite as to preclude specific performance of the contract. She further contends that the court abused its discretion in refusing to admit evidence of sales of similar parcels of real estate. With these contentions, we cannot agree.

The plaintiff, Mary Rendl, was the owner of certain farm property consisting of approximately ninety-nine acres. At the time of the transaction and the execution of the contract, she was an 81-year-old widow having attended school through the fifth grade. Her son, Fred Zellhofer, after conferring with his mother and learning of her intentions to sell the farm, went to Anderson in September and a conference ensued pertaining to the sale of his mother's farm. Anderson inquired as to the location of the property, and stated he would look at the property. This conversation lasted approximately fifteen minutes and during the conversation Anderson stated that he had sold another farm nearby at a price of $400 per acre.

Fred Zellhofer had attended school through the fifth or sixth grade and he had previously owned and sold a farm of his own. He stated that the reason his mother wished to sell the farm was that she had a bad tenant, that the farm was in weeds and the buildings were in a state of disrepair.

The defendant, Anderson, was a licensed real estate broker in the State of Illinois and had been a real estate salesman for one year and previously had been in the farming business.

Approximately September 23rd or 24th, Anderson came to Mr. Zellhofer's home where Mrs. Rendl was present, and at that time presented a real estate broker's listing showing the property for sale at a price of $400. The contract stated:

> "In consideration of the sum of One Dollar, receipt acknowledged, I hereby give you exclusive sale of my property, described as 99-acre farm, commonly known as the Mary Rendl farm, located on Freeman and Powers Roads, Sections 10 and 15, T 42 N, Range 7–E., Rutland Township, Kane County, State of Illinois. Rights reserved to include legal description. Possession to be obtained on or before March 1, 1966. For a period of (see reverse side) 60 days from this date, at a price of $400.00 per acre subject to an existing incumbrance of $. . . bearing interest at . . . per cent, due . . . or any less sum which I shall agree to accept, and to pay you 6% commission as established by the Chicago Real Estate Board, on such sale price, you have the privilege of purchasing this property during said period, if you so desire . . . .

> "In consideration of having given you this exclusive contract, it is understood that you are to advertise and show the property without any expense to me.
> s/ Mary Rendl"

and was addressed to "Home Owners Realty, Roy E. Anderson, Broker, Big Timber Road, Elgin, Illinois."

On this occasion when Anderson, Mr. Zellhofer, Mrs. Zellhofer and the plaintiff were present, Mr. Zellhofer specifically inquired from Anderson whether the farm was only worth $400 per acre to which Anderson replied, that was all that it was worth. Anderson explained the option (although it is disputed as to whether or not the plaintiff read the option before signing it). At the instruction of her son, the plaintiff signed the agreement. The plaintiff, her son and her son's wife all stated they did not care who bought the farm, that it was for sale and that they wanted to sell it. This entire conference lasted approximately fifteen minutes.

Approximately six or seven days later, on or about September 20th, 1965, the plaintiff's son received an offer to buy real estate addressed to the plaintiff and signed by the defendant Anderson, and the defendant, Neal. Neal, was a friend of Anderson's and was in the real estate brokerage and land and real estate investment business.

The offer to buy specified that an escrow was to be established at the First National Bank of Elgin; that the plaintiff was to convey her property in trust by stamped warranty deed; that the purchasers were obligated to make an earnest money deposit of 10% of the purchase price less real estate brokerage commissions; that the earnest money could be paid by check and that the plaintiff was obligated to convey merchantable title with the right of the purchasers, the defendants, to rescind the contract on default of the plaintiff, among other provisions not here material to this appeal. The offer to purchase was accompanied by two checks, drawn respectively by Anderson and Neal, dated September 30th, 1965, made payable to the First National Bank of Elgin in the amount of $1,980 each.

An attorney for the plaintiff, on or about October 1st and 2nd, discussed with the defendants, the mechanics of setting up an escrow. The attorney for the plaintiff did not mention the disaffirmance of the option agreement. At the time the checks were tendered to the plaintiff, the defendant, Anderson, testified he was going to try to subdivide it, and that the plaintiff thought it was a good idea.

On or about October 3rd, 1965, the plaintiff's son, Mr. Zellhofer, saw a want ad in the Chicago Sunday Tribune under the heading "Farms for Sale" listing a 99-acre farm for a price of $95,000. Shortly thereafter, a final conversation occurred between the plaintiff's son, Mr. Zellhofer, and the defendant, Anderson, in which Anderson demanded to know the reason for the delay in performance of the option to purchase and why the plaintiff was not going through with the sale. It is to be noted that the 99-acre farm advertised in the Chicago Tribune was not an advertisement as to the farm of the plaintiff but of another farm.

On October 18th, the attorney for the plaintiff wrote to Anderson enclosing the two checks and notifying him that the plaintiff did not recognize Anderson's claim that he was entitled to purchase the property.

Anderson testified on the stand that he advised plaintiff's son that the adjoining farm sold for $400, but that he and Neal bought the property to make money. He testified he did not tell the plaintiff that if you broke the property into residential parcels, it would bring more money. He further testified that they bought it to speculate. He also testified that, after first showing the property to a party who did not make an offer, he then showed the property to the codefendant, Neal, about September 30th, and they thought that they might be able to make a profit by selling it off in three pieces or chopping it up.

In Burrows v. Palmer, 10 Ill2d 344, 140 NE2d 668 (1956), the court enunciated the standard required

261

to sustain a transaction when a fiduciary relationship exists at the time of the transaction, at page 353:

"It is well established by the decisions of this court that where a fiduciary relationship exists at the time of a transaction whereby the dominant party appears to gain, the transaction is deemed presumptively fraudulent but such presumption is not conclusive and may be rebutted by clear and convincing proof that the dominant party has exercised good faith and has not betrayed the confidence reposed in him. The burden rests upon the dominant party to produce such evidence and if the burden is not discharged the transaction will be set aside in equity. In general, to overcome this presumption of fraud and undue influence the dominant party must show: (1) *full disclosure of all relevant information to the subservient party;* (2) *adequate consideration;* (3) *competent and independent advice to the principal before completing the transaction. . . .*" (Emphasis supplied.)

"In the instant case the burden shifted to the defendant, . . . , to establish by clear and convincing evidence that the transaction was free of fraud and undue influence on his part since the fiduciary relationship between him and his mother as of the date of conveyance was established."

We do not agree with the contention of the plaintiff that the option agreement was presumptively fraudulent when the facts are applied to the above enunciated rule. First, as to disclosure of all relevant facts prior to the transaction, we note that at the time the transaction was entered into between the plaintiff and the defendant, Anderson, there is no evidence that the defendants were planning to subdivide the property and speculate with it. In fact, the evidence is to the contrary. Only after showing the property to a prospective buyer who never made

262

an offer, did Anderson then contact the codefendant, Neal, to discuss whether or not Neal might be interested in the property. It is reasonable to infer that at this time the defendants first discussed the possibilities of subdividing the farm whereupon the parts would then equal a sum greater than the whole.

The amount plaintiff was to receive for the farm was adequate under the testimony as to value received in the case. One of the experts in real estate appraisal called by the plaintiff testified that he was a real estate appraiser and consultant by profession and that, in his opinion, based upon his education and experience, the fair, reasonable market value of the farm at the time of the execution of this transaction was $600 per acre. This appraiser admitted that this was his first appraisal in Kane County. The second expert real estate appraiser called by the plaintiff testified that he was currently engaged in the real estate brokerage business and had a lifetime acquaintanceship with the land in the township where the plaintiff's land was located. He testified that a new toll road entrance would soon be put in which would increase real estate values and that during the previous four or five years the population growth and toll roads had increased real estate values in the township by 25% to 33%. He testified that the plaintiff's farm was increased in value by the nature and character of the homes which abutted and by a beautifully wooded area immediately to the east. However, he further testified that he himself had been attempting to sell the plaintiff's farm for at least two years prior to the subject of this occurrence. He had shown it to possibly a dozen or fifteen people and his asking price was $550 per acre. He testified that wooded areas are an attractive sales feature for residential property and that the plaintiff's farm had none. The neighboring farm which had been sold for $400 per acre and which the plaintiff discussed with Anderson, prior to the execution of this transaction, contained wood-

ed acreage. In this second expert appraiser's opinion, the fair market value of the plaintiff's property at the time of the execution of the contract with the broker's option ranged between $625 and $650 an acre.

The defendants produced an expert witness as to the value of the property who testified that sometime prior to this occurrence he thought that he had advised the plaintiff's son, Mr. Zellhofer, that the farm could not be sold for more than $350 per acre to which Mr. Zellhofer replied that he would be satisfied if he could obtain $400 per acre. (The plaintiff points out that this could not have occurred and denies that conversation.) Thereafter, the defendants' expert testified that in his opinion the farm was worth $400 an acre and no more, basing his opinion on the condition of the land, the hills on the property, the condition of the buildings, the small pieces of land which comprised the total farm and on the fact that it would be difficult to sell the property for purposes of a subdivision due to lack of trees.

In an action tried to the court without a jury, the determination of the credibility of witnesses and the weight to be given to the evidence is for the trial court. Meyer v. Buckman, 7 Ill App2d 385, 406, 129 NE2d 603 (1955). In the case at bar, the trial court heard and observed the testimony pertaining to the value of the plaintiff's farm at the time of the occurrence and apparently felt that $400 per acre was fair consideration. We shall not disturb that determination.

We turn to the third point in a fiduciary relationship: that the dominant party must show competent and independent advice to the principal before completing the transaction. We hold that the plaintiff had competent independent advice by conferring with her son, Mr. Zellhofer, who actually brought the plaintiff and the defendant, Anderson, together; and the plaintiff had, of course, the benefit of advice from her former real estate broker who testified that he had been attempting to sell

her farm for at least two years prior to the occurrence. The rule of competent and independent advice does not preclude a principal from entering into a contract with the fiduciary under these facts.

 The next contention of the plaintiff is that the contract containing the option was unenforceable because it was not supported by valid consideration. With this we cannot agree. It is noted that the option introduced into evidence shows consideration in the sum of One Dollar ($1.00), "receipt acknowledged," and further consideration upon the part of the defendant to show the property, and to advertise without expense to the owner. Option agreements to convey without any corresponding obligation to purchase will be enforced if made upon sufficient and valuable consideration. Hunter v. Vonbronk, 333 Ill 321, 324, 164 NE 671 (1929). In Adams v. Peabody Coal Co., 230 Ill 469, 473, 82 NE 645 (1907), it was held that the express consideration of "one dollar" is adequate consideration. Therefore, we hold that the option was enforceable because it was supported by valid consideration. As to the plaintiff's contention that the defendant never complied with the terms of the option agreement, we only point to what the defendants did to exercise the option and to the terms of the option, and can come to no other conclusion but that the defendants complied.

 The authority relied upon by the plaintiff in support of her contention that there was no valid consideration, Moehling v. W. E. O'Neil Const. Co., 20 Ill2d 255, 265, 170 NE2d 100 (1960), is clearly distinguishable upon the facts. Unlike that case, the option agreement here was not a separate arrangement but a part of the exclusive sales contract. The contention that the defendant never complied with the terms of the option agreement or that the option agreement was so vague and indefinite that it was error for the trial court to grant specific performance is also without merit. See Welsh v. Jakstas,

265

401 Ill 288, 297, 82 NE2d 53 (1948) and Morris v. Goldthorp, 390 Ill 186, 193, 60 NE2d 857 (1945).

We consider the last contention of the plaintiff that the trial court committed prejudicial error in refusing to admit evidence of sales of similar parcels of real estate offered by plaintiff for the purpose of showing the fair and reasonable market value of plaintiff's property.

The law in Illinois is well established that evidence of the sale of similar parcels of property is admissible in order to show value of real estate. In City of Chicago v. Blanton, 15 Ill2d 198, 154 NE2d 242 (1958), the court held on page 202:

> "To aid in establishing such value, this court has consistently held that evidence of voluntary sales of similar parcels occurring in the same vicinity at or about the time of filing are admissible unless such proof causes a confusion of issues which offsets the benefits to be derived therefrom."

The trial court in its discretion admitted evidence of sales of similar or comparative parcels, three in number, in the same vicinity in behalf of the plaintiff. Plaintiff was permitted to introduce evidence of an asking price of a parcel of land in the same vicinity at the same time which is palpable error when there had been actual sales. City of Chicago v. Blanton, supra, at page 202.

However, this error was committed on behalf of the plaintiff and therefore only benefits the plaintiff. The court excluded testimony of a comparative sale on the basis that the expert did not have personal knowledge but was testifying as to the sale price based upon hearsay, and therefore, this evidence of a comparative sale was properly excluded. The third sale which the plaintiff claims the court prejudicially excluded was a sale which took place after the lawsuit was filed. It is undisputed that we are concerned here with the fair

266

market value of the plaintiff's property at the time of the *execution* of the option agreement.

■ The court in City of Chicago v. Blanton, supra, in discussing the discretion of the court said on page 202:

"No general rule can be laid down regarding the degree of similarity which must exist between property sold and that condemned in order to make evidence of such sale proper. Since no two pieces of real estate are exactly alike and since economic influences are constantly changing, the admission of such proof rests largely in the discretion of the trial court, and its decision will be reversed only where such discretion has been clearly abused."

■ We hold that the trial court properly exercised its discretion and that the evidence of sale of one parcel which the court erroneously admitted, was an error which benefited the plaintiff and of which she cannot complain here.

It is our opinion that the judgments of the lower court should be affirmed.

Judgments affirmed.

MORAN, P. J. and DAVIS, J., concur.