GEORGE GLASS *et al.*, Co-Executors under the Will of Walter L. Glass, Deceased, *et al.*, Plaintiffs-Appellees, *v.* M. D. BURKETT, Defendant-Appellant.

Fifth District   No. 78-45

Opinion filed October 11, 1978.

Roy Eugene Clark, of Clark Law Offices, of Mt. Vernon, for appellant.

Donald G. Musick, of Musick & Mitchell, of Mt. Vernon, for appellees.

Mr. JUSTICE KUNCE delivered the opinion of the court:

The defendant, M. D. Burkett, appeals from a judgment of the Circuit Court of Jefferson County rendered against him, after a bench trial, in the amount of $33,340.90 which included actual damages of $22,680.72 and punitive damages of $10,660.18, the latter including attorney fees of $5,000.

This action was brought to recover damages for violation of defendant's fiduciary duties to the co-executors of the estate of Walter Glass in the sale of a 30-acre tract of land improved with a residence and owned by the decedent at the time of his death on April 12, 1975. The plaintiffs' evidence showed that Walter Glass died on April 12, 1975, and that his will named George Glass, a cousin of deceased, and Alice Glass, wife of deceased, co-executors. At the time of his death, Walter Glass owned a 30-acre tract of land which was appraised, for estate tax purposes, at $40,000. Walter Glass' home was situated on this tract of land.

On June 3, 1975, the co-executors entered into a 30-day listing agreement with the defendant for the sale of the 30-acre tract for $50,000 and instructed the defendant to sell the property in one tract. Until June 24, 1975, the co-executors had no further contact with defendant except for one telephone call to Mrs. Glass in which he asked only for Mr. Glass' telephone number. On June 24, 1975, when the co-executors went to defendant's office, defendant stated that he thought he could sell the property for $45,000; however, the property would have to be surveyed and subdivided into a subdivision. The procedure was to involve more than simply selling one piece of land to one person and another piece to a second person. Defendant did not inform the co-executors that he had an

opportunity to sell part of the land to Mr. and Mrs. Robert Stewart. Defendant then offered to purchase the property for $43,000 with a proposed contract of sale dated June 18, 1975. After the co-executors conferred with George Howard, Jr., attorney for the estate, they contracted to sell the land to defendant for $40,420.

Between June 3, 1975, and June 24, 1975, Agnes Artis, daughter of the deceased, expressed an interest in the property to the defendant, but she thought that $50,000 was too high. Defendant never recontacted her in order to inform her that the property could be purchased for less than $50,000. Prior to June 18, 1975, Ms. Ferne Bee, a real estate broker, informed defendant that Mr. and Mrs. Robert Stewart were interested in purchasing 1½ acres including the house. Defendant stated that he had a prospect who was interested in the whole tract and that he wanted to try to sell it before Ms. Bee showed the property to the Stewarts. On June 19, 1975, Ms. Bee communicated to the defendant the Stewarts' offer to buy the 1½-acre tract for $25,000. Earnest money was tendered with the offer. On either the 24th or 25th of June, 1975, defendant accepted the Stewarts' offer. The Stewarts' offer was made to the defendant rather than to the co-executors because Ms. Bee had some indication that the defendant was buying the property from the co-executors. Subsequently, defendant sold the remaining 28½ acres to a Jim Walker for $35,000.

At the time of the transaction between the parties, one of the Rules of the Illinois Department of Registration and Education promulgated for the administration of the Real Estate Brokers and Salesmen License Act (Ill. Rev. Stat. 1975, ch. 114½, par. 1 *et seq.*) provided that a real estate broker shall disclose to any and all sellers, or prospective sellers, any and all material knowledge he may have as soon as it may be practical for him to do so. It also provided that a broker shall disclose to all parties in any transaction, in writing, any interest he has or may have as purchaser, seller, or otherwise in the real estate constituting the subject matter thereof or in such transaction, directly or indirectly.

Mr. George Howard, Jr., testified that the co-executors of the estate were diligent in discussing matters of the estate with him and that he had no discussion with the co-executors concerning the 30-acre tract between June 3, 1975, and June 24, 1975.

During the period of the listing agreement, defendant received inquiries from people who either wanted to purchase the house and five acres or from people who wanted the entire tract but thought that the asking price was too high. These offers were not communicated to the co-executors because defendant did not consider them feasible. The only offer defendant received in writing was from the Stewarts which was for the house and 1½ acres for $25,000. This offer was communicated to Alice Glass by telephone. Defendant was unable to contact Mr. Glass and left

the offer on his desk until the following Tuesday, June 24, as the co-executors usually came to defendant's office on a Tuesday. Each time the co-executors came to his office, they were advised that they could obtain more money by having the land surveyed and subdivided, but they rejected this advice.

On June 24, 1975, when the co-executors came to defendant's office, defendant attempted to show them the Stewarts' offer, but they did not want to see the offer and restated their desire to sell the property as one tract. Defendant then offered to buy the property for $43,000 as he had been interested in the property for over 15 years as a potential retirement home site for himself. On June 24, 1975, after the co-executors had sold the property to the defendant, he contacted Ms. Bee and accepted the Stewarts' offer for the 1½-acre parcel. On August 5, 1975, the Glass' sale to the defendant and the defendant's sale to the Stewarts were closed. After the co-executors had listed the property with the defendant, he advertised the property for sale in 5- to 30-acre tracts as the co-executors did not care how the property was sold as long as it was completely sold within 30 days.

The court found that a fiduciary relationship existed between defendant and the co-executors and that defendant violated the fiduciary relationship by failing to disclose either orally or in writing, to the co-executors or either of them, the preoffer negotiations with Ferne Bee and the Stewarts' valid written offer for 1½ acres for $25,000. The court also found that defendant failed to obtain a refusal from Agnes Artis, a prospective purchaser of the whole tract, for the sum of $43,000 or for any sum in excess of defendant's purchase price. Further, the court found persuasive the testimony of Ms. Bee in which she stated that defendant advised her to wait a few days before showing the property to the Stewarts as he had a prospective purchaser of the whole tract. Then on June 19, 1975, Ms. Bee submitted an offer, as agent for the Stewarts, to the defendant, who she learned was buying the property, for the purchase of the acre and a half without defendant ever informing the co-executors of the potential transaction. The court concluded that "[t]he actions, conduct and concealment by said Defendant, M. D. Burkett, were intentional, and not in good faith, knowing and intending that the loss of the Co-Executors would be his gain." The court ruled that the plaintiffs had been damaged in the sum of $22,680.72.

■■ The defendant does not contest that a fiduciary relationship existed between himself and plaintiffs. Where a fiduciary relationship exists at the time of a transaction whereby the dominant party appears to gain, the transaction is deemed presumptively fraudulent but such presumption is not conclusive and may be rebutted by clear and convincing proof that the dominant party has exercised good faith and

has not betrayed the confidence reposed in him. (*Jones v. Washington* (1952), 412 Ill. 436, 107 N.E.2d 672.) The burden rests upon the dominant party to produce such evidence. In general, to overcome this presumption of fraud and undue influence the dominant party must show: (1) full disclosure of all relevant information to the subservient party; (2) adequate consideration; (3) competent and independent advice to the principal before completing. (*Burrows v. Palmer* (1956), 10 Ill. 2d 344, 140 N.E.2d 668; *Rendl v. Anderson* (2d Dist. 1968), 103 Ill. App. 2d 255, 242 N.E.2d 767.) Defendant contends that the presumption of fraud was successfully rebutted at trial. Contrary to defendant's contention, the court specifically found that the Stewarts' offer was not communicated, either orally or in writing, to the co-executors. In a bench trial the determination of the credibility of the witnesses and the weight to be given to the evidence is for the trial court. (*Gaffney v. McCarron* (1st Dist. 1977), 45 Ill. App. 3d 944, 360 N.E.2d 508.) Therefore, when the co-executors signed the sales contract with defendant without being informed that Ms. Bee had a prospective purchaser for 1½ acres at $25,000, defendant violated his fiduciary responsibility to the co-executors. (See *Rieger v. Brandt* (1928), 329 Ill. 21, 160 N.E. 130.) If the co-executors would have been advised of the Stewarts' offer, they might have concluded, after discussing the matter with Mr. Howard, the attorney whose advice they normally sought in matters concerning the Glass estate, that the Stewarts' offer should be accepted and attempt to sell the remaining 28½ acres at $631 per acre or any price in excess of that figure as no one buyer had been secured for the entire 30-acre tract. $631 per acre for the 28½ acres added to the Stewarts' purchase price would equal the defendant's offer of $43,000. As the events developed, the remaining 28½ acres was subsequently sold to a Jim Walker for $35,000, or approximately $1,228 per acre.

The trial court, as the finder of fact, gave great weight to the testimony of Ms. Bee. Ms. Bee approached defendant prior to June 19, 1975, and stated that she had a potential buyer for 1½ acres on which the house sat. On June 19, 1975, a written offer was delivered to defendant at his home. The offer was made to defendant rather than the co-executors because she had some indication that defendant was buying the entire tract. The offer was not accepted at that time because defendant stated to Ms. Bee that someone in the Glass family might be interested in the whole property. Ms. Bee had received earnest money in connection with this offer from the Stewarts. On June 24, 1975, defendant accepted the Stewarts' offer, and Ms. Bee deposited their earnest money in the Cross-Davidson escrow account within 48 hours of the acceptance. The money was deposited on June 25.

Ms. Bee's testimony, analyzed in the context of other evidence,

reflects the following. The Stewarts' interest was communicated to defendant. He then called Mrs. Glass to obtain Mr. Glass' telephone number. The offer was not communicated to Mrs. Glass, as is obvious from her testimony, that although she was co-executor, she would do nothing unless Mr. Glass had approved. Not being able to get hold of Mr. Glass, defendant thought why not buy it myself and make a profit and had a contract of sale prepared on June 18. By defendant's own testimony, the Stewarts' offer was not communicated to Mr. Glass until after the contract of sale from the co-executors to defendant was typed and until after the Stewarts' written offer was presented to defendant in his name rather than the co-executors'. When Ms. Bee tendered the Stewarts' written offer, she had to be stalled until defendant had a chance to purchase the property. Ms. Bee was told that a member of the Glass family was interested in purchasing the property. Agnes Artis was interested in the entire property; however, defendant never asked her if she would be interested in purchasing the property at the price less than $50,000. When the co-executors met with the defendant on June 24, the Stewarts' offer was never communicated to them. Without knowledge of the Stewarts' offer, they sold the property to defendant, and defendant then accepted the Stewarts' offer. After failing to initially communicate the Stewarts' offer to the co-executors, defendant never intended to communicate the offer to the co-executors.

■ Defendant's second issue raised on appeal is "By failing to raise any objection to the sale of the real estate with full knowledge of the facts, the co-executors ratified the actions of their broker." However, as discussed previously, the trier of fact specifically found that the co-executors were never informed of the Stewarts' offer. Therefore, this issue is frivolous.

After the court found that defendant had violated his fiduciary responsibility, the trial on the counts of the complaint dealing with punitive damages was conducted. Evidence was introduced as to defendant's financial condition and other court cases which involved disputes against defendant in real estate property transactions. Defendant explained his position concerning those cases. Glenn Moore, a Mount Vernon attorney, testified that in his opinion, the reasonable attorney's fees for a case as the one at bar is $5,000. After hearing evidence, the court stated, "It's the finding of this Court that the plaintiffs are entitled to receive attorneys fees and find to be a reasonable sum of $5,000. The Court affixes the punitive damages in the sum of $5,660.18. It's the Order of this Court that the plaintiffs have judgment against the defendant in the sum of $33,340.90 as together with costs."

■■ ■ Although punitive damages may be recovered in a proper case, they are not favored and will be allowed with caution and confined within narrow limits. (*Smith v. Dunaway* (5th Dist. 1966), 77 Ill. App. 2d 1, 221

N.E.2d 665.) Punitive damages are recoverable only where a wrongful act is accompanied by aggravating circumstances such as willfulness, wantonness, malice or oppression. (*Wetmore v. Ladies of Loretto* (2d Dist. 1966), 73 Ill. App. 2d 454, 220 N.E.2d 491; *City of Chicago v. Shayne* (1st Dist. 1964), 46 Ill. App. 2d 33, 196 N.E.2d 521; *Knierim v. Izzo* (1961), 22 Ill. 2d 73, 174 N.E.2d 157.) Where the conduct of the defendant is characterized by one or more of the aggravating circumstances, punitive damages are awarded as a punishment to the wrongdoer and as a means to deter the particular defendant and others from committing like offenses in the future. (*Tolle v. Interstate Systems Truck Lines, Inc.* (5th Dist. 1976), 42 Ill. App. 3d 771, 356 N.E.2d 625.) In the case at bar, the trial court specifically found that "[t]he actions, conduct and concealment by said Defendant, M. D. Burkett, were intentional, and not in good faith, knowing and intending that the loss of the Co-Executors would be his gain." Having found that aggravating factors were present in the violation of defendant's fiduciary duty, the court awarded punitive damages. The award of punitive damages in the case at bar was not an abuse of discretion. *Quenn v. Behm* (2d Dist. 1978), 58 Ill. App. 3d 253, 373 N.E.2d 1382.

■■ Lastly, the defendant contends that attorney's fees were improperly awarded in the case at bar. Defendant's attack is two pronged: (1) that attorney's fees cannot be awarded in a case such as the one before this court; and (2) that attorney's fees were not awarded as part of the punitive damages award but were an award separate and distinct from any other award of damages in this case. Wrongful conduct of the defendant, which has been characterized as being either wilful, wanton, malicious, or oppressive, is the root of all cases where litigation expenses have been allowed as an exception to the general rule that litigation expenses are not allowable to the successful party in the absence of a statute or in the absence of some agreement or stipulation specifically authorizing them. The foregoing exception has been the law in Illinois beginning with *Himes v. Keighblingher* (1853), 14 Ill. 469. (*Insurance Company of North America v. J. L. Hubbard Co.* (4th Dist. 1974), 23 Ill. App. 3d 254, 318 N.E.2d 289.) Attorney's fees as an element of punitive damages were allowable under these facts, and it was not an abuse of the trial court's discretion.

■■ A trial court may properly consider as one element of punitive damages the amount of plaintiff's attorney's fees. (*Chicago Title & Trust Co. v. Walsh* (1st Dist. 1975), 34 Ill. App. 3d 458, 340 N.E.2d 106, 115.) Attorney's fees cannot be awarded as a separate entity distinct from punitive damages. (*Shelly Oil Co. v. Universal Oil Products Co.* (1st Dist. 1949), 338 Ill. App. 79, 86 N.E.2d 875.) In the case at bar, plaintiffs prayed for $40,000 in punitive damages; attorney's fees were not even mentioned

in the complaint. After finding that defendant was liable to plaintiffs, the court conducted a trial on the counts of the complaint praying for punitive damages. All the evidence in support of the punitive damage counts was presented at that one trial. The court found that due to the wilful violation of defendant's fiduciary duty, punitive damages of $5,660.18 and attorney's fees of $5,000, the amount attorney Moore opined was reasonable in this case, were awarded in this case. Although not precisely stated, the record establishes that it was the intent of the trial court to award a total of $10,660.18 in total punitive damages.

Accordingly, the total judgment of the trial court, including that part thereof awarding $5,000 attorney's fees as an element of the $10,660.18 of punitive damages, is affirmed.

Affirmed.

EBERSPACHER, P. J., and JONES, J., concur.