**In re Dan Kenneth BRAUN, Debtor.**

**Dan Kenneth BRAUN, Plaintiff,**

**v.**

**CHAMPION CREDIT UNION, Defendant.**

**Bankruptcy No. 90–01336.**
**Adv. No. 91–3122.**

United States Bankruptcy Court,
N.D. Ohio, W.D.

March 26, 1992.

Phillip Browarsky, Daniel Camick, Toledo, Ohio, for debtor.

Richard A. Shinaberry, Gordon Barry, Toledo, Ohio, for defendant.

## OPINION AND ORDER AWARDING SANCTIONS FOR VIOLATION OF INJUNCTION

WALTER J. KRASNIEWSKI, Bankruptcy Judge.

This matter came on for trial upon Debtor/plaintiff's complaint for violation of automatic stay and subsequent injunction pursuant to 11 U.S.C. § 524. Upon consideration of the evidence adduced at trial, the court finds that defendant violated the injunction imposed by § 524 and that judgment should be awarded in favor of Debtor against defendant and its attorney, Richard A. Shinaberry in the amount of $15,000 for sanctions and an amount for compensatory damages to be subsequently determined by this court upon the filing of an appropriate affidavit.

### FACTS

At trial, the parties stipulated to the following facts:

Debtor/plaintiff filed a voluntary petition under chapter 7 of title 11 on April 24, 1990.

Notice of that petition issued by the court; defendant received said notice.

Defendant did not attend the meeting of creditors, file a proof of claim, file a motion for relief from stay, file a motion for abandonment or file an adversary proceeding to determine the dischargeability of a debt or to object to Debtor's discharge.

On March 14, 1991, defendant filed a complaint in the municipal court of Toledo, Lucas County, Ohio; Debtor filed an answer thereto; a judgment entry granting judgment in favor of defendant was entered on November 15, 1991.

At the time of Debtor's petition, he had two accounts with defendant, to-wit: a Visa account with a balance of $1,726.24 and an automobile loan with a balance of $275.52.

Debtor alleges that as a result of defendant's state court action in violation of the injunction imposed by 11 U.S.C. § 524, he is entitled to compensatory and punitive damages. At trial, Debtor asked that his complaint be amended, requesting $10,000 in compensatory damages and $15,000 in punitive damages.

Debtor testified that he currently lives in Iowa, having relocated from Sylvania, Ohio sometime in September, 1990. He currently works for Champion Spark Plug and has, since August, 1971. Debtor stated that he purchased, in 1981, a 1937 car kit to convert a 1970 volkswagon that he owned into a 1937 Jaguar. He paid approximately $5,900 for this kit. Subsequently, he obtained a loan from defendant for $3,500 pledging the converted vehicle as collateral. Defendant's Exhibit B. Defendant required Debtor to obtain an appraisal of that vehicle. Debtor complied by contacting an appraiser listed in the telephone directory. This appraiser valued the vehicle at $9,000. Defendant's Exhibit C. Debtor opined that this appraisal was a fair valuation. Payments on this loan were made by payroll deductions and, after Debtor's layoff, direct payments.

In November, 1987, Debtor was divorced; in April, 1988, Debtor was laid off from his job. As a result, Debtor began experiencing financial problems. Debtor stated that he disassembled the converted vehicle in November, 1989, selling the kit for some $3,500 to a gentleman from Arizona. The purchaser wanted the parts, rather than the converted vehicle, as he had his own chassis upon which to assemble the kit. At the time of the sale, Debtor testified that he had forgotten that defendant held a first lien on the vehicle. Debtor still possesses the chassis and it is kept at his former Ohio address.

During the pendency of his bankruptcy case, Debtor indicated that defendant never contacted him regarding this vehicle. Additionally, Debtor stated that he never intended to conceal the vehicle or otherwise deceive defendant about its whereabouts. Debtor admitted that in answering ques-

tion 12 of his statement of affairs, he did not answer truthfully as he had, in fact, made a transfer within one year of the filing of his petition, the sale of the kit.

Debtor testified that he received a copy of the complaint filed by defendant in the municipal court of Toledo, Lucas County, Ohio sometime after the granting of his discharge. Plaintiff's Exhibit 1. After his receipt, he contacted his attorney. He also received correspondence from attorney Richard A. Shinaberry regarding the outstanding indebtedness due defendant, threatening criminal prosecution if the matter was not resolved. Plaintiff's Exhibit 7. According to Debtor, he received a telephone call from Mr. Steve Grindle, employed by defendant, inquiring about the locale of the vehicle. Debtor also testified that he received documents from defendant that, if Debtor signed, would represent a new loan, the funds of which would be used to repay the money discharged as a result of Debtor's bankruptcy. These measures caused Debtor to feel threatened and harassed.

Attorney Richard Shinaberry testified that defendant retained him after the creditors' meeting had been held in Debtor's case. Thereafter, he attempted to ascertain the whereabouts of Debtor's vehicle, pledged to defendant, and the intentions of Debtor regarding that asset. Mr. Shinaberry's first contact regarding Debtor's case was with Joe Loeffler, the attorney representing Debtor at the time of the filing of his petition. Mr. Loeffler subsequently left that firm before Mr. Shinaberry was able to "firm up" the location of the vehicle, its condition and Debtor's intention.

Subsequently, Mr. Lee Johnson represented Debtor. Mr. Johnson informed Mr. Shinaberry, sometime after the § 341 meeting but before the granting of Debtor's discharge, that Debtor still possessed the vehicle and that Debtor wished to reaffirm this debt. Mr. Johnson did not disclose the location or condition of the vehicle. However, Mr. Johnson later told Mr. Shinaberry that Debtor would not reaffirm this debt and that the vehicle was available for defendant.

Mr. Shinaberry testified that he represented defendant in the municipal court action. Mr. Shinaberry, on behalf of defendant, filed a complaint seeking damages of $2,001.76. Plaintiff's Exhibit 1. Mr. Shinaberry explained that the action represented an in rem suit for conversion resulting from the $9,000 appraisal of the converted vehicle, which vehicle no longer existed; it did not, according to Mr. Shinaberry, represent an attempt to collect a prepetition debt. At the time of the filing of that state court action, Mr. Shinaberry did not know if the conversion had occurred prior to the filing of Debtor's petition, or after its filing.

Debtor's petition was reviewed by Mr. Shinaberry, according to his testimony. Schedule B-4, listing five vehicles with values from $50 to $850, was also reviewed by Mr. Shinaberry. Although no vehicle valued at approximately $9,000 appeared on that schedule, Mr. Shinaberry did not believe that this put him on notice that the kit was no longer available as Debtor's petition reflected that no sales or transfers had been made within one year of Debtor's petition. Furthermore, defendant asserts that Debtor had an obligation to affirmatively defend the state court action by asserting his discharge in bankruptcy.

On cross examination, Mr. Shinaberry stated that he could not recall at what point he became aware that the 1937 kit had been removed from the chassis; Mr. Camick, Debtor's current attorney of record, informed Mr. Shinaberry that Debtor had sold the kit, but that the chassis was available to defendant. Although asked to point out where in the state court complaint the allegations specifically complained of a postpetition conversion, Mr. Shinaberry was unable to answer except to state that the suit represented an in rem complaint. Debtor's counsel, after reviewing the complaint, then asked Mr. Shinaberry how this action could reflect an in rem action when the complaint reflects that the collateral is no longer available. Mr. Shinaberry stated that he could not answer

that question. According to Mr. Shinaberry, a complaint in the bankruptcy court was not filed as he assumed Debtor still possessed the collateral, that he believed Debtor would be reaffirming that debt and that he thought the collateral would be returned to defendant.

## DISCUSSION

■ Debtor seeks relief pursuant to 11 U.S.C. § 524(a)(2) which provides that a discharge

> (2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the Debtor, whether or not discharge of such debt is waived....

Debtor complains that defendant's action in instituting the municipal court action violated this statute. The court concurs. Section 524(a)(2) serves to protect a Debtor from a subsequent state court action by a creditor whose claim had been discharged in the bankruptcy case. *See* 3 Collier on Bankruptcy ¶ 524.01 at 524-4 (15th ed. 1991). Such is the case here. Debtor was granted a discharge on August 27, 1990; defendant, through its attorney Mr. Richard A. Shinaberry, filed its state court action on March 14, 1991.

Defendant asserts that its state court action represents a permissible in rem action, rather than an impermissible one in personam. These terms are defined as:

> **In rem.** A technical term used to designate proceedings or actions instituted against the thing, in contradistinction to personal actions, which are said to be in personam.
>
> "In rem" proceedings encompass any action brought against person in which essential purpose of suit is to determine title to or to affect interests in specific property.... It is true that, in a strict sense, a proceeding in rem is one taken directly against property, and has for its object the disposition of property, without reference to the title of individual claimants; but, in a larger and more general sense, the terms are applied to

actions between parties, where the direct object is to reach and dispose of property owned by them, or of some interest therein. Such are cases commenced by attachment against the property of debtors, or instituted to partition real estate, foreclose a mortgage, or enforce a lien. In the strict sense of the term, a proceeding "in rem" is one which is taken directly against property or one which is brought to enforce a right in the thing itself.

> **In personam.** Against the person. Action seeking judgment against a person involving his personal rights ... as distinguished from a judgment against property (i.e. in rem).

Black's Law Dictionary 791, 793 (6th ed. 1990) (citations omitted).

Initially, the court notes that Mr. Shinaberry stated that he was admitted to practice law in 1973. Although Debtor's counsel stipulated to Mr. Shinaberry's qualification to practice in this court, the court would have been interested to learn of that date. Mr. Shinaberry stated that he could not recall the date, but it had "been awhile." Indeed, because it has "been awhile," the court finds Mr. Shinaberry's conduct in this matter to be absolutely outrageous.

Upon review of the state court complaint, and as pointed out by Debtor's counsel upon cross examination of Mr. Shinaberry, the court is convinced that Mr. Shinaberry filed an in personam complaint. That complaint states that Debtor sold the collateral unlawfully. Plaintiff's Exhibit 1 at 2. Mr. Shinaberry testified that at the time of the filing of that suit, he was unsure whether the conversion occurred prepetition or postpetition. Additionally, that complaint requested judgment in the amount of $2,001.76, the total amount of the outstanding debt due defendant on the date of the filing of Debtor's petition. *See supra* p. 135 ($1,726.24 + $275.52). Finally, Mr. Shinaberry, when questioned about the jurisdiction of that complaint, in personam or in rem, stated that he could not answer that question.

Mr. Shinaberry admitted that the complaint asked for money damages and also admitted that, upon review of debtor's petition, he could not determine the vehicle to which defendant's lien attached. *See* Schedule B–4. Mr. Shinaberry repeatedly stated that the state court action complained of a postpetition conversion, yet, he could point to no allegation in the complaint alleging this action as postpetition. Furthermore, If the collateral no longer existed, as alleged in the state court complaint, and if the relief requested was monetary damages reflective of the outstanding unpaid indebtedness, Mr. Shinaberry, as an attorney with some 19 years of experience, knew that he sought a money judgment against Debtor for nonpayment of a preexisting loan, previously discharged in bankruptcy. Such a knowing and willful violation of one of the fundamental protections afforded by the filing of a bankruptcy petition, causes this court to consider Mr. Shinaberry's actions so seriously. *In re Barbour*, 77 B.R. 530, 17 C.B.C.2d 1277 (Bkrtcy. E.D.N.C.1987) (violations of the discharge injunction are not to be treated lightly; intentional violations will not be tolerated by this court).

█ Mr. Shinaberry asserted that Debtor failed to raise, as an affirmative defense to the state court action, his discharge in bankruptcy. Indeed, such an affirmative defense is unnecessary and has been since 1970.

Prior to 1970, the effect of a discharge was to create an affirmative defense that the Debtor could plead in any action brought on the discharged debt. A primary reason for the amendments was to effectuate the discharge and render needless its assertion as an affirmative defense in a subsequent state court action. In the usual case of discharge abuse or creditor harassment, suit would be brought in a local court after the granting of the discharge, and if the Debtor failed to plead the discharge affirmatively, the defense was deemed waived and an enforceable judgment could then be taken against him. Too often, the defense was in fact waived either through inadvertence, failure to be served or lack of means to obtain counsel. In any event, the former Debtor would find himself and his property subject to a judgment taken by default against him. Section 14f was enacted to prevent creditors from entering the arena of local courts and creating issues of waiver and default, and to restrain creditors holding such discharged debts from forcing the Debtor into any other forum or proceeding.

5 *Collier on Bankruptcy* ¶ 524.01 at 524–5 (15th ed. 1991).

In order to further drive home this court's annoyance with such an antiquated argument, it will quote further:

As stated in the report on this measure by the Senate Judiciary Committee, the major purpose of the proposed legislation is to effectuate, more fully, the discharge in bankruptcy by rendering it less subject to abuse by harassing creditors. Under present law creditors are permitted to bring suit in State courts after a discharge in bankruptcy has been granted and many do so in the hope the Debtor will not appear in that action, relying to his detriment upon the discharge. Often the Debtor in fact does not appear because of such misplaced reliance, or an inability to retain an attorney due to lack of funds, or because he was not properly served. As a result a default judgment is taken against him and his wages or property may again be subjected to garnishment or levy. All this results because the discharge is an affirmative defense which, if not pleaded, is waived.

S. 4247 is meant to correct this abuse.... The creditor asserting nondischargeability will have to file a timely application in the absence of which the debt will be deemed discharged. H.R. 18871 provides that at the same time notice is given to creditors of the date by which objections to discharge must be filed, creditors are also notified of the date by which applications to determine nondischargeability of their debts must be filed. When timely filed, the matter

will be heard in the bankruptcy court and final disposition made of it.

\* \* \* \* \* \*

The reasons behind the enactment of section 524(a), which is certainly comparable to and, in effect, amounts to a continuation of section 14f of the Act, include those which originally prompted the enactment of section 14f itself. With section 524(a)(2), however, congress has gone further and expanded section 14f(2) to encompass the enjoining of any act to collect a discharged debt such as dunning by telephone or letter, or indirectly through friends, relatives, or employees, harassment, threats of repossession and the like. . . .

In essence, section 524(a) declares that any judgment rendered on a discharged debt in any forum other than the bankruptcy court is null and void as it affects the personal liability of the Debtor. Second, and perhaps more importantly, it contains an injunction prohibiting creditors holding discharged debts from (1) commencing an action on such debt. . . .

Accordingly, should a creditor institute suit in a state court postdischarge, and obtain therein a judgment against the Debtor, such judgment is rendered null and void by section 524(a). The purpose of the provision is to make it absolutely unnecessary for the Debtor to do anything at all in the state court action.

Should the provisions of the discharge order be violated by a creditor subject thereto, such creditor will also have violated an injunction. He will thus be subject to citation for contempt in the bankruptcy court upon application of the Debtor.

*Id.* at 524–5–6, 524–7–9 (citations omitted). The court need say no more; defendant's argument is superfluous.

Having found that Mr. Shinaberry knowingly and willfully violated the discharge order entered pursuant to § 524, the court will, then, address Debtor's request for damages. Debtor's complaint requested $1,000 as compensatory damages and $1,500 as punitive damages. At trial, Debtor's counsel sought to amend its complaint, as a result of the almost one year pendency of the complaint and further expenses unnecessarily incurred due to defendant's flagrant violation, to request $10,000 as compensatory damages and $15,000 as punitive damages.

█ The court notes that there exists conflicting analysis concerning this court's ability to impose damages as a result of defendant's violation of the discharge order. Defendant's violation of § 524 permits Debtor to, minimally, recover reasonable attorney's fees incurred in defense of this action. *See In re Wasp,* 137 B.R. 71 (Bkrtcy.M.D.Fla.1992) (state court action violated § 524 and court awarded Debtor reimbursement for attorney's fees and costs incurred in defending state court action and in seeking relief from bankruptcy court); *In re Brantley,* 116 B.R. 443 (Bkrtcy.D.Md.1990) (Generally, the American rule governs the awarding of attorney's fees in federal court providing that each party should bear the costs of his own legal fees. There are three judicially created exceptions to the American rule based on the inherent equitable powers of a court: (1) when the litigant preserves or recovers a fund for the benefit of others; (2) when a losing party acts in bad faith, vexatiously, wantonly, or for oppressive reasons; or (3) when a defendant willfully disobeys a court order (citations omitted)); *In re Burson,* 107 B.R. 285, 21 C.B.C.2d 1478 (Bkrtcy.S.D.Cal.1989) (creditor violated § 524(a)(2) and Debtor would be permitted to recover reasonable attorney's fees incurred in defense of that action); *In re Holland,* 21 B.R. 681, 9 B.C.D. 385, 6 C.B.C.2d 1307 (Bkrtcy.N.D.Ind.1982) (violation of § 524 is punishable by contempt, awarding of attorney's fees and costs). However, because the court does not have sufficient evidence before it to determine whether Debtor's request for $10,000 compensatory damages is justified, it will grant Debtor ten days from the date of this opinion and order in which to file an affidavit detailing those amounts for which it seeks compensation; defendant will have ten days thereafter in which to object.

**140**

Regarding Debtor's request for an award of punitive damages in the amount of $15,000, the court would like to carte blanch permit this award. It feels, compelled, however to analyze the request. Section 524 does not contain a subsection paralleling § 362(h). However, this court finds that § 105 empowers it to impose sanctions for violation of the discharge order. *Barbour*, 77 B.R. at 532. Additionally,

> it is fair to conclude that all courts, whether created pursuant to Article I or Article III of the Constitution, do have inherent civil contempt power to enforce compliance with their lawful judicial orders, and no specific statute is required to invest a court with civil contempt power. This power is inherent in the authority to hear and determine legal disputes and it has been recognized at all times that the judicial power to issue an order carries with it the power to enforce the order.

> \* \* \* \* \* \*

It would be ironic indeed and nothing more than an exercise in futility to grant a Debtor a discharge, together with a permanent injunction prohibiting the pursuit of the Debtor after discharge in an attempt to enforce discharged pre-petition debts, if the very court which granted the discharge would be powerless to enforce an obedience of the order and permit violation of the permanent injunction with impunity.

*Matter of Miller*, 81 B.R. 669, 676, 678–79, 16 B.C.D. 1187, 19 C.B.C.2d 712 (Bkrtcy. M.D.Fla.1988) (citations omitted). *See also In re Power Recovery Systems, Inc.*, 950 F.2d 798 (1st Cir.1991) (it is well settled that bankruptcy courts are vested with contempt power); *In re Skinner*, 917 F.2d 444 (10th Cir.1990) (while bankruptcy courts do not have inherent civil contempt power, we conclude that congress granted them civil contempt power by §§ 105 and 157); *In re Bowling*, 116 B.R. 659 (Brktcy. S.D.Ind.1990) (though creditor's action do not quite rise to level of contempt, to warrant an award of punitive damages, court

concludes that it is within its equity powers under § 105 to award damages).

> It is difficult to assess damages to compensate [Debtors] for the humiliation, inconvenience and anguish they experienced because of [creditor's] lawsuit. [Debtor] testified that he moved to a new community after filing the bankruptcy petition to begin a new life. His efforts to finance a new home, however, were frustrated by the lawsuit filed by [creditor]. [Debtor] also was required to be away from his business to attend the hearing ... at a cost of at least $200 in income. The court finds that [Debtors] should be compensated in the amount of $500 for the damages they sustained as a result of [creditor's] intentional violation of the discharge injunction. Additionally, the Debtors incurred reasonable attorney's fees of $400 for which they should be compensated.

*Barbour*, 77 B.R. at 531.

The court finds that Debtor, in the instant situation, is entitled to damages as a result of defendant's violation of the discharge injunction. *In re Myers*, 18 B.R. 362, 18 B.C.D. 1124, 6 C.B.C.2d 347 (Bkrtcy.E.D.Va.1982), is determinative of the damages issue. In *Myers*, a creditor, postpetition, filed a state court action to recover personalty but requested the amount due under the sale contract. The court stated:

> [t]his is more than scandalous. It is unlawful, abusive and dishonest. Unless a debt is declared by law or the court to be nondischargeable, creditors may not pursue a Debtor in personam. Indeed, creditors are enjoined from so pursuing a Debtor. 11 U.S.C. § 524. Any proper pursuit would be of the property itself, not a sou in money. It is not even entitled to the actual value should the [collateral] no longer exist.

*Id.* 18 B.R. at 363. Creditor, in that case, did not, subsequently, pursue that action. *Id.* The *Myers* court, however, stated that "the abuse perpetrated cannot be washed away with that after the hand has been caught in the proverbial jar." *Id.* That is,

[creditor] is a sophisticated creditor and knows better. We mean for the injunction relative to discharge to be honored and it will not be unless the point is emphasized. Therefore, [creditor] is ... fined $10,000 for contempt for violation of the discharge injunction.

*Id.* at 363–64.

 Additionally, Mr. Shinaberry's attitude warrants a finding of civil contempt to impose civil penalties. *See In re Simonetti,* 117 B.R. 708 (Bkrtcy.M.D.Fla.1990) (firm's obstinate failure to respond to calls and to correspondence made by Debtors' counsel to clear up this matter certainly caused the Debtors' damage and required the Debtors' counsel to request a hearing and appear in court to assert the rights of his clients and seek compensation for the damages; based on the totality of the picture, this court is satisfied that a cavalier attitude of the law firm representing creditor would certainly warrant to find them in civil contempt and to impose civil fine penalties in favor of the Debtors to compensate them for the damages they have suffered in the form of legal fees they have incurred which were necessary to assert their rights granted to them). *Myers, supra,* was entered in 1982; Debtor's request for $15,000 in 1992, appears appropriate and same will be assessed against Mr. Shinaberry and his client, jointly and severally.

 As this opinion and order reflects, this court finds Mr. Shinaberry's conduct reprehensible and, accordingly, finds sanctions under Bankruptcy Rule 9011(a) appropriate. That rule provides:

[t]he signature of an attorney or a party constitutes a certificate that the attorney or party has read the document; that to the best of the attorney's or party's knowledge, information, and belief formed after reasonable inquiry it is well-grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; and that it is not interposed for any improper purpose, such as to harass, or to cause unnecessary delay, or needless increase in the

cost of litigation or administration of the case.... If a document is signed in violation of this rule, the court on motion or on its own initiative, shall impose on the person who signed it, the represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the document, including a reasonable attorney's fee.

Analogizing Bankruptcy Rule 9011 to Rule 11 Fed.R.Civ.P., the court notes that the test for imposition of sanctions is

whether the individual's conduct was reasonable under the circumstances. If the court finds that the alleged misconduct was not reasonable, the court must impose sanctions. The nature and amount of the sanctions, though, may vary depending upon the severity of the misconduct.

*Mihalik v. Pro Arts, Inc.,* 851 F.2d 790, 792–93 (6th Cir.1988) (citations omitted). *See also Century Products, Inc. v. Sutter,* 837 F.2d 247 (6th Cir.1988) (the conduct of counsel that is the subject of sanctions must be measured by an objective standard of reasonableness under the circumstances (citations omitted)).

Finally, regarding Rule 11 sanctions, factors for the court's consideration include:

The first and most important factor is deterrence. Second, the sanctions are meant to compensate the party receiving the award for expenses incurred in litigating the improperly filed suit and the sanctions motion.... The third factor is mitigation.... Finally, there must be a consideration of the sanctioned party's ability to pay.

*Danvers v. Danvers,* 959 F.2d 601, 605 (6th Cir.1992).

Mr. Shinaberry filed the state court complaint on March 14, 1991. Plaintiff's Exhibit 1. The instant complaint was filed with this court on March 29, 1991. Mr. Shinaberry, on behalf of defendant, on May 20, 1991, filed an answer to Debtor's complaint and a counter-claim. A pretrial conference on Debtor's complaint was held on

June 26, 1991. On August 30, 1991, Debtor filed a motion for the court to make a decision on the record, to which defendant responded and requested dismissal of Debtor's complaint. The court, however, denied Debtor's motion and scheduled another pretrial conference. On November 15, 1991, the state court issued a judgment entry awarding judgment in favor of defendant in the amounts of $2,001.76 as compensatory damages, $5,000.00 as punitive damages and $1,260.00 as attorney's fees. A final pretrial conference was held in this court on November 22, 1991, scheduling this matter for trial on March 18, 1992. Given this factual chronology, the court is convinced, based upon Mr. Shinaberry's own testimony, that his conduct was in violation of Bankruptcy Rule 9011. His conduct was not reasonable and he pursued the state court action and asserted the meritless counter-claim in this court; sanctions must be imposed.

Debtor's filing of the instant complaint should, minimally, have put Mr. Shinaberry, an attorney with some 19 years of experience, on notice that a contested issue existed and that no further action should have been taken in the state court pending adjudication of the issues herein. Furthermore, as a result of Mr. Shinaberry's actions, defendant was awarded a judgment in excess of $8,000 ($2,001.76 + $5,000.00 + $1,260.00 = $8,261.76). This judgment, obviously, does not represent recovery for an in rem suit; it represents an in personam judgment. The damages awarded in that suit represent an attempt to collect a discharged debt as it includes the exact amount of the discharged debt, *see supra* p. 137, plus punitive damages and attorney's fees; that judgment does not represent recovery of the property, a $100 chassis. Not only did Mr. Shinaberry file a counter-claim with this court, but he proceeded to take a judgment in the state court. Mr. Shinaberry cites *Herron v. Jupiter Transportation Co.*, 858 F.2d 332 (6th Cir.1988) stating that

> litigants have "a continuing responsibility to review and reevaluate his pleadings and where appropriate modify them to conform to Rule 11."

Motion for Dismissal of Plaintiff's Complaint and Motion in Opposition to Decision on the Record Alone at 10 (quoting *Herron*, 858 F.2d at 335–36). Indeed, Mr. Shinaberry should have followed his own research and, minimally, evaluated his state court action after the initiation of Debtor's complaint. This court will quote further from *Herron:*

> Failure to [review and reevaluate] permits the district court, within its discretion, to impose sanctions against the offending litigant or attorney when a reasonable inquiry would have disclosed that the complaint was either lacking in factual support or unwarranted by existing law.

> \* \* \* \* \* \*

> This position is consistent with similar Rule 11 cases that have concluded that an attorney and the litigant have a continuing obligation to review and reevaluate their pleadings, motions and other papers and upon discovery that such papers were without merit, to immediately dismiss the action at the risk of inviting the imposition of Rule 11 sanctions.

*Id.* at 336 (citations omitted). Mr. Shinaberry, In any event, should not have pursued the state court action, taking a judgment entry in an amount exceeding $8,000.

As previously stated, ad infinitum *supra* pp. 138–39, Mr. Shinaberry's actions, on behalf of defendant, mirror the abuse congress was attempting to eliminate in acting § 524(a). As in *Simonetti, supra,* this court finds Mr. Shinaberry's cavalier attitude and failure to "clear up this matter," minimally before trial, or earlier at the initiation of Debtor's complaint or one of the two subsequent pretrial conferences held upon Debtor's complaint, such egregious conduct that it is forced to impose sanctions under Bankruptcy Rule 9011 and to grant Debtor's request for $15,000 damages.

Mr. Shinaberry implied that he did not file any proceeding during the pendency of Debtor's case as he understood that Debtor would be reaffirming the debt owed defendant. The court is unsure how this infer-

ence excuses Mr. Shinaberry's conduct in instituting the state court action. That is, once it became apparent, as it no doubt did, that Debtor would not be reaffirming the debt, Mr. Shinaberry, on behalf of defendant, could have requested an extension of time, under Bankruptcy Rule 4004(b), in which to investigate the possibility of a complaint. Additionally, defendant could have requested an examination of Debtor pursuant to Bankruptcy Rule 2004 in order to make inquiry of Debtor regarding the collateral and its disposition or whereabouts. Lastly, defendant had alternative remedies available to it as a result of Debtor's failure to reaffirm, redeem or surrender, including seeking relief from stay, permitting repossession of its collateral, abandonment of the collateral and, if appropriate, denial of Debtor's discharge for failure to comply with a court order. *See Matter of Bayless*, 78 B.R. 506, 511 (Bkrtcy. S.D.Ohio 1987).

Mr. Shinaberry also insinuated that Debtor failed to turnover the collateral. The court is, however, unaware of any duty imposed upon a Debtor to arrange for transportation or pickup of collateral pledged to a secured party. Furthermore, Debtor testified that he informed defendant that the chassis was available, and still available at the time of trial, to defendant; it is located at his former residence.

Defendant filed a counterclaim alleging that Debtor's complaint was frivolous. Clearly, the court finds this assertion not well taken. Additionally, defendant's counterclaim references § 523. Any cause of action asserted by defendant under § 523 is untimely and, again, not well taken. The court notes that defendant's counterclaim is identical to paragraphs 1 through 11 of its state court complaint, further indicia that its state court action was a proceeding in personam. Based upon the foregoing discussion, defendant's counterclaim should be dismissed.

Finally, defendant cites *In re Brugin*, Case No. 90–0209, 1991 WL 378166 (Bkrtcy.N.D.Ohio Aug. 8, 1991), in defense of its actions. The court finds that case inapposite. In *Brugin*, Judge Speer found the state court complaint reflected conversion of collateral, not recovery of a discharged debt. As stated, this court finds defendant's state court complaint sought recovery of the discharged debt. At trial, Mr. Shinaberry testified that, at the time of the filing of the state court action, he was not sure whether Debtor had converted the collateral prepetition or postpetition. *See supra* p. 136. In fact, although not relevant to adjudication of the issues herein, the court finds that no conversion occurred. Debtor stated that his son had removed some items from the chassis; this court finds that this represents nothing more than that a few "nuts and bolts" were taken from the chassis. Also, that collateral remains available to defendant today. Additionally, Judge Speer, in *Brugin*, found that the creditor was attempting to recover damages to the property; here, the court found creditor was attempting to recover a debt due it. The record in *Brugin* reflected that the creditor, from affidavits, unsuccessfully attempted to recover the collateral; here, Debtor testified that the collateral was available for defendant at his former residence. Lastly, in *Brugin*, the creditor requested and was granted relief from stay to proceed against the collateral; here, defendant made no such request.

In light of the foregoing, it is therefore

ORDERED that defendant cause the November 15, 1991 judgment entry in the municipal court of Toledo, Lucas County, Ohio to be expunged from that record and provide evidence of same with this court within ten days of the date of this opinion and order. It is further

ORDERED that defendant's counterclaim be, and hereby is, dismissed. It is further

ORDERED that Debtor/plaintiff file within ten days of the date of this opinion and order an affidavit detailing amounts for which he seeks compensatory damages; defendant is granted ten days thereafter in which to object. It is further

ORDERED that Debtor/plaintiff Dan Kenneth Braun be, and hereby is, granted judgment in the amount of $15,000 against defendant Champion Credit Union and its

counsel, Richard A. Shinaberry, jointly and severally, as sanctions.