In re William **VAZQUEZ**, Debtor.

William **VAZQUEZ**, Plaintiff,

v.

**SEARS, ROEBUCK & CO.**, Lewis John Craft & Associates, Lewis John Craft, Attorney and Donna Craft Cain, Attorney, Defendants.

Bankruptcy No. 84 B 00224.
Adversary No. 97 A 00407.

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

June 16, 1998.

William Vazquez, Villa Park, IL, pro se.

Alan I. Ehrenberg, Scott C. Frost, Blatt, Hasenmiller, Leibsker, Moore & Pellettieri, Chicago, IL, for Defendants.

## MEMORANDUM OPINION

JOHN H. SQUIRES, Bankruptcy Judge.

This matter comes before the Court on the motion for summary judgment filed by William Vazquez (the "Debtor") and for decision on his amended complaint for various claimed violations of the discharge injunction and order entered pursuant to 11 U.S.C. § 524, against Sears, Roebuck & Co. ("Sears") and its attorneys, Lewis John Craft & Associates (the "Law Firm"), Lewis John Craft ("Craft") and Donna Craft Cain ("Cain"). For the reasons set forth herein, the Court denies the motion for summary judgment. The Court finds that the discharge order issued in the Debtor's first bankruptcy case was willfully violated by Sears, the Law Firm, Craft and Cain. Accordingly, the Court awards the Debtor a judgment for his actual damages in the sum of $1,015.84, plus taxable costs and interest against all Defendants, jointly and severally. In addition, the Court awards the Debtor $10,000.00 in punitive damages as a sanction pursuant to 11 U.S.C. § 105 against Sears.

## I. JURISDICTION AND PROCEDURE

The Court has jurisdiction to entertain this matter pursuant to 28 U.S.C. § 1334 and General Rule 2.33(A) of the United States District Court for the Northern District of Illinois. It is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O).

## II. FACTS AND BACKGROUND

The Debtor filed a Chapter 7 petition in 1984, and scheduled a debt owed to Sears, which was allegedly the subject of a reaffirmation agreement that was not filed nor approved, notwithstanding his discharge under 11 U.S.C. § 524. In 1996, through its attorneys, the Law Firm and Craft and Cain, Sears pursued the Debtor in Illinois state court for the unpaid but discharged debt even though Sears had previously sued the Debtor in 1985 for the unpaid balance on the reaffirmation agreement and already obtained and collected on a judgment against the Debtor. This is gist of the conduct of which the Debtor complains here (plus other claims) which allegedly caused him damage, and was violative of the discharge injunction of § 524, for which he seeks recovery, including actual and punitive damages and costs. The Debtor has filed a multiple count amended complaint to attempt to plead his various theories which give rise to his claimed damages. He has opted out of the class actions filed against Sears in Massachusetts in order to pursue his claims in this adversary proceeding. Notwithstanding the Court's oft-repeated suggestion that he retain an attorney to represent him and assist in the prosecution of this matter, the Debtor persisted in presenting his own case, as is his right, with all attendant consequences which flow therefrom. The Court will attempt to briefly summarize the material facts and evidence adduced at trial. The Court has taken judicial notice of the contents of the 1984 and 1996 bankruptcy case files and the adversary proceeding file.

After the Debtor filed his first Chapter 7 petition in 1984, he entered into what can be charitably characterized as sometimes overheated negotiations with Sears regarding a reaffirmation agreement over a washer he had purchased using his Sears credit card. At the time the 1984 bankruptcy case was

filed, the unpaid balance on the account was approximately $3,000.00. The Debtor testified that he executed a written reaffirmation agreement for the washer for a substantially smaller amount alleged to be $330.00, although the Debtor never produced a copy of the reaffirmation agreement. He assumed that some attorney would file it with the Court. It is most significant that the 1984 bankruptcy case file did not contain either a copy of the reaffirmation agreement or any order approving it entered by Judge Thomas James, who was the bankruptcy judge assigned the case and who entered the discharge order in May, 1984. Sears does not dispute the Debtor's evidence either that the reaffirmation agreement was entered into or that it was not filed with the Court and thus not approved by Judge James.

Notwithstanding the discharge, the Debtor's fortunes did not improve and he went into default under the reaffirmation agreement. In 1985, Sears sued the Debtor in Illinois state court and obtained a judgment against him for over $300.00. It proceeded to collect $248.00 on the judgment by way of a wage deduction proceeding. The Debtor stated that this proceeding caused him some problems with his employer with whom he already had problems from his activities as a union steward. In addition, the Debtor claims that this adversely affected his credit as reflected on a credit report, with the result in 1991 that he and his brother lost an opportunity to have their parents finance their desired joint acquisition of a Chicago rental property.

To add more fuel to the Debtor's fire and outrage, Sears again sued the Debtor in 1996 in Illinois state court, represented by the Law Firm, on which both Craft and Cain appeared, not just for the unpaid balance on the reaffirmation agreement, but on the remaining $2,898.90 unpaid balance previously owed on the credit card account, but discharged. Understandably upset, the Debtor advised Cain and the state court of the discharge, but he did not have the 1984 bankruptcy case number to supply them. At a subsequent hearing, the Debtor discovered that Cain had moved for entry of a default judgment against him which was shortly followed by wage deduction proceedings served on his employer. The Debtor subsequently filed a counterclaim and apparently began to spend some time doing his own legal research (which he estimated was about 300 hours) and drafting and filing pleadings, which he testified diverted his time from a potential second job. After several hearings involving the Debtor, Craft and Cain, the 1996 collection action was dismissed. The Debtor's financial and other problems continued to mount with the result that he filed a second bankruptcy case in 1996. The case trustee in that case filed a no-asset report and has not sought to pursue the instant claims against Sears and the other Defendants.

The Debtor filed this adversary proceeding pro se and estimates that he has expended 2000 hours of his time researching and prosecuting it to trial. His amended complaint seeks compensatory damages totaling $605,-000.00. The Debtor contends that his efforts arising from his problems with Sears and the other Defendants cost him his full time job, but admits that he was terminated on the "pretext" that the employer was not satisfied with his work. He readily admitted at trial that this matter has become a focal point of his life and for him a mantra. At the time of trial, he was on track to receive his undergraduate degree, and had been working in the computer field for 17 years. He admitted that his credit report, which he furnished to his parents, contained a number of adverse reports from other creditors besides Sears. Though terminated by his last full-time employer in June, 1997, his severance package benefits provided for his salary continuation through year end 1997. By the time of trial, he contended that he should be awarded damages in excess of $1.5 million on his various causes of action, all arising out of the reaffirmation agreement in the 1984 bankruptcy case and Sears' subsequent collection actions against him.

Cain testified that she and her father were retained to represent Sears in the 1996 state court collection action through a collection agency based on a client affidavit and statement on account, which the Debtor claims were false. After the Debtor advised her of

his prior bankruptcy, she had her secretary contact Sears and was advised they had no record of the same. She admitted prosecuting that action to a default judgment and instituting a post-judgment wage deduction proceeding. However, after the Debtor filed his counterclaim and disclosed the 1984 bankruptcy case number, she again contacted Sears and obtained authority to dismiss the 1996 state court action. In her experience of representing Sears in approximately 300 collection cases since 1989, this matter was the only one where the account debtor had previously filed a bankruptcy. She was assisted by her father, Craft, who attended some of the state court hearings.

Sears also had the Debtor's former supervisor testify regarding his termination of the Debtor for poor performance in light of adverse performance reviews and employer dissatisfaction with various matters related to his employment and work. The details of this testimony will not be further discussed, given the Debtor's contrary position.

### III. *DISCUSSION*

#### A. *Motion for Summary Judgment*

In order to prevail on a motion for summary judgment, the movant must meet the statutory criteria set forth in Rule 56 of the Federal Rules of Civil Procedure, made applicable to adversary proceedings by Federal Rule of Bankruptcy Procedure 7056. Rule 56(c) reads in part:

> [T]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c). The primary purpose for granting a summary judgment motion is to avoid unnecessary trials when there is no genuine issue of material fact in dispute. *Trautvetter v. Quick,* 916 F.2d 1140, 1147 (7th Cir.1990); *Farries v. Stanadyne/Chicago Div.,* 832 F.2d 374, 378 (7th Cir.1987) (citation omitted).

In 1986, the United States Supreme Court decided a trilogy of cases which encourage

the use of summary judgment as a means to dispose of factually unsupported claims. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Matsushita Electric Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The burden is on the moving party to show that no genuine issue of material fact is in dispute. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510; *Matsushita,* 475 U.S. at 585–86, 106 S.Ct. at 1355–56; *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552.

All reasonable inferences drawn from the underlying facts must be viewed in a light most favorable to the party opposing the motion. *Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513–14; *Matsushita,* 475 U.S. at 586, 106 S.Ct. at 1355–56; *Peerman v. Georgia–Pacific Corp.,* 35 F.3d 284, 286 (7th Cir.1994); *Cuddington v. Northern Ind. Public Serv. Co.,* 33 F.3d 813, 815 (7th Cir.1994). The existence of a material factual dispute is sufficient only if the disputed fact is determinative of the outcome under applicable law. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510; *Frey v. Fraser Yachts,* 29 F.3d 1153, 1156 (7th Cir.1994). "Summary judgment is not an appropriate occasion for weighing the evidence; rather the inquiry is limited to determining if there is a genuine issue for trial." *Lohorn v. Michal,* 913 F.2d 327, 331 (7th Cir.1990). However, "[i]f evidence opposing summary judgment is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249–50, 106 S.Ct. at 2510–11 (citations omitted); *see also Griffin v. Air Line Pilots Ass'n, Int'l,* 32 F.3d 1079, 1084 (7th Cir.1994). When the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial and summary judgment must be granted. *Matsushita,* 475 U.S. at 587, 106 S.Ct. at 1356.

The Court finds that the Debtor is not entitled to summary judgment because there are many material issues of fact, including, but not limited to, whether he has suffered compensable damages to the extent claimed for the alleged violations of the discharge

order entered in the 1984 bankruptcy case. Although the Debtor filed the requisite statement of material facts under Local Bankruptcy Rule 402.M, many of those statements were denied by Sears, the Law Firm, Cain and Craft in their responses filed under Local Bankruptcy Rule 402.N and some of their additional statements of fact were denied by the Debtor in his reply.

## B. *Liability for Violations of 11 U.S.C. § 524*

A proceeding to enforce the discharge order and adjudicate a violation thereof falls within a bankruptcy court's core jurisdiction. *In re Schatz,* 122 B.R. 327, 328 (N.D.Ill.1990). At the outset, the Court notes that this is not the first instance of a problem that Sears has had with its reaffirmation agreements with bankruptcy debtors. *See, e.g., In re Iappini,* 192 B.R. 8 (Bankr.D.Mass.1995); *In re Latanowich,* 207 B.R. 326 (Bankr.D.Mass.1997). The bankruptcy discharge is central to the relief afforded by the Bankruptcy Code. *Id.* at 332. The Court's statutory authority to enforce the discharge order is set forth in 11 U.S.C. § 105(a), which provides a sufficient basis and power to ensure compliance with the discharge injunction and, if necessary, to impose sanctions as another mechanism by which the Court enforces its own orders. *Id.* at 333. Recently, the Seventh Circuit, in finding that attorneys may be sanctioned under § 105(a), noted that it provides "bankruptcy courts with ample authority to sanction conduct that abuses the judicial process...." *In re Volpert,* 110 F.3d 494, 501 (7th Cir.1997).

There is no real dispute that the Debtor received a discharge in the 1984 bankruptcy case and that the discharge applied to the Debtor's pre-petition debt to Sears. Thus, the discharge order tracked the statutory language of § 524(a)(2) and acted as an injunction against the continuation of or the commencement of any act to collect or recover on any debt against the Debtor. Although the Debtor's credible evidence shows that a reaffirmation agreement was negotiated and apparently signed between the Debtor and Sears for a small portion of the debt, it is clear from the case file and docket that a copy of the signed reaffirmation agreement was neither filed with nor approved by the Court as was then required under the language of § 524(c).[1]

Lacking either a filed reaffirmation agreement or an order approving it, Sears' subsequent efforts to collect from the Debtor in the 1985 and 1996 actions in the state court were violative of § 524(a). Thus, the reaffirmation agreement was void and never became enforceable. *See Latanowich,* 207 B.R. at 336. There is no question in the Court's view that when Sears took its various actions to collect against the Debtor it did so with at least the constructive notice and knowledge that the reaffirmation agreement had neither been filed nor approved. Thus, Sears, its agents and its attorneys were in deliberate and knowing disregard of the well-known law relating to reaffirmation agreements in bankruptcy. Neither Sears nor the Law Firm, of which Cain and Craft were members, are legal neophytes unversed in bankruptcy practice or procedure. Rather, they are all experienced and sophisticated creditors or creditor's attorneys who participated in the collection efforts of a solicited reaffirmation agreement that was neither filed nor approved. Such actions constitute a willful and intentional flouting of the Bankruptcy Code.

---

1. Section 524(c) formerly provided in pertinent part:

(c) An agreement between a holder of a claim and the debtor, the consideration for which, in whole or in part, is based on a debt that is dischargeable in a case under this title is enforceable only to any extent enforceable under applicable bankruptcy law, whether or not discharge of such debt is waived, only if—

(1) such agreement was made before the granting of the discharge under section 727, 1141, or 1328 of this title;

(2) the debtor has not rescinded such agreement within 30 days after such agreement becomes enforceable;

(3) the provisions of subsection (d) of this section have been complied with; and

(4) in a case concerning an individual, to the extent that such debt is a consumer debt that is not secured by real property of the debtor, *the court approves such agreement....*

11 U.S.C. § 524(c) (1984) (emphasis supplied).

■ The Court flatly rejects Sears' argument that these events were merely a computer or other mistake and that Sears was somehow unaware of the 1984 bankruptcy and discharge order when it subsequently pursued the Debtor in 1985 and 1996. Sears' size and the complexity of its corporate structure does not excuse its disregard of the discharge injunction or the reaffirmation process in a matter to which it was a party, any more than the size or complexity of the Internal Revenue Service excused its violations of the automatic stay of 11 U.S.C. § 362(a). *See In re Price,* 103 B.R. 989, 993 (Bankr. N.D.Ill.1989), *aff'd,* 130 B.R. 259 (N.D.Ill. 1991) (collecting cases). *See also McCormack v. Federal Home Loan Mortgage Corp. (In re McCormack),* 203 B.R. 521, 525–26 (Bankr.D.N.H.1996).

Sears' attorneys during closing arguments at trial candidly and finally conceded that there is liability for Sears' actions in proceeding with the 1985 and 1996 state court actions and efforts to collect the debt. All Cain and Craft could argue was the point that they did not participate in any of Sears' collection activities until 1996 when they relied on the client affidavit in filing the collection case, which they dismissed as soon as they verified the Debtor's representation that he had filed the 1984 bankruptcy case. Thus, the issue of liability needs no further discussion: Sears, the Law Firm, Cain and Craft are liable for their respective actions in violating the discharge order entered in 1984 in light of the ineffective and unenforceable reaffirmation agreement which did not meet the requirements of 11 U.S.C. § 523(c). The more difficult issues relate to the amount of allowable and proven damages the Debtor actually sustained and whether punitive damages should be taxed as a sanction against Sears, the Law Firm, Craft and Cain.

### C. *Damages*

■ "A plaintiff must allege ... injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *Allen v. Wright,* 468 U.S. 737, 751, 104 S.Ct. 3315, 3324, 82 L.Ed.2d 556 (1984) (citation omitted). Once a party has proven that he has been damaged, he needs to show the amount of damages with reasonable certainty. *See Doe v. United States,* 976 F.2d 1071, 1085 (7th Cir. 1992), *cert. denied,* 510 U.S. 812, 114 S.Ct. 58, 126 L.Ed.2d 28 (1993). A party seeking damages must prove them using methodologies that need not be intellectually sophisticated. *Schiller & Schmidt, Inc. v. Nordisco Corp.,* 969 F.2d 410, 415 (7th Cir.1992). Still, a damage award cannot be based on mere speculation, guess or conjecture. *Adams Apple Distrib. Co. v. Papeleras Reunidas, S.A.,* 773 F.2d 925, 930 (7th Cir.1985). Damages must be based on evidence rather than guesswork, wishful thinking, and pie-in-the-sky dreaming. *See Lester v. Resolution Trust Corp.,* 994 F.2d 1247, 1252 (7th Cir. 1993); *Zazu Designs v. L'Oreal, S.A.,* 979 F.2d 499, 505–06 (7th Cir.1992).

■ The Debtor's itemization of damages, included among his summary judgment motion papers, seeks very substantial sums for items of unproven actual damages and for non-compensable items. For example, he seeks an award of $20,000.00 for the "induced reaffirmation" and another $20,000.00 because Sears "failed to file reaffirmation." He seeks $20,000.00 for "contribution to–Austin legal." In addition, the Debtor seeks a total of $350,000.00 for his denial of credit from his parents because of the adverse credit report that included an adverse reference to Sears and the lost value in the building, but he never had an accepted offer on any building that he and his brother desired to acquire with the parental financing sought. Moreover, he seeks $50,000.00 for his time of 400 hours expended at the hourly rate of $125.00 in connection with the second collection action, yet he is not a lawyer. It is not the Court's duty to articulate compensable elements of damages awardable under the law or to support same with credible and competent proof. That is for the parties and their attorneys. Unsupported legal theories or arguments are forfeited points lost to the party having the burden of proof. *See LINC Finance Corp. v. Onwuteaka,* 129 F.3d 917, 921 (7th Cir.1997); *Pelfresne v. Village of Williams Bay,* 917 F.2d 1017, 1023 (7th Cir. 1990).

█ The only real proven actual damages arise from the judgment obtained against him in the first collection action on which a subsequent wage deduction proceeding produced $248.00 from his employer in July, 1986. Interest on that amount at the Illinois judgment rate of 9% simple interest per year totals approximately $267.84 ($248.00 × .09 or $22.32 per year × 12 years from 1986–1998). Thus, the Debtor's actual out-of-pocket damages proven from the record total $515.84 in connection with the first collection action. The Court further finds that the Debtor is also entitled to a reasonable sum for his time, effort, travel and other incidental expenses he incurred in finally securing the benefit of his discharge in the defense of the second state court collection action and in this adversary proceeding, which the Court fixes at $500.00. *Accord Latanowich,* 207 B.R. at 337. He would be entitled to reasonable attorney's fees but, he was not represented by counsel in this matter. Thus, the Court awards compensatory damages of $1,015.84, plus interest at the federal judgment rate from March 17, 1997, the date the original complaint was filed, as well as taxable costs under 28 U.S.C. § 1920.

█ A pro se litigant is not entitled to collect fees payable to an attorney for legal work because he is not an attorney. *Pansier v. State of Wisconsin Dept. of Revenue (In re Pansier),* 208 B.R. 41, 46 (Bankr.E.D.Wis. 1997) (pro se litigant denied attorney's fees in contempt action for violation of discharge order); *Davis v. United States (In re Davis),* 201 B.R. 835, 837 (Bankr.S.D.Ala.1996). Numerous cases under a variety of federal statutes have concluded that a pro se litigant is not entitled to attorney's fees. *Cf. Kay v. Ehrler,* 499 U.S. 432, 435, 111 S.Ct. 1435, 1436, 113 L.Ed.2d 486 (1991) (noting that "a *pro se* litigant who is *not* a lawyer is *not* entitled to attorney's fees" under the Civil Rights Attorneys Fees Award Act, 42 U.S.C. § 1988) (emphasis in original); *Citicorp Nat. Credit & Mortgage Servs. for Citibank v. Welch (In re Welch),* 208 B.R. 107, 112 (S.D.N.Y.1997) ("Section 523(a)(2)(A) simply does not authorize the payment of attorneys fees to persons who are not attorneys."); *S.E.C. v. Price Waterhouse,* 41 F.3d 805, 808 (2d Cir.1994) (holding that a litigant who

does not have an attorney is not entitled to reimbursement for attorney's fees under the Equal Access to Justice Act, 28 U.S.C. § 2412(d)(1)(A)); *Strange v. Wexler,* 796 F.Supp. 1117, 1120 (N.D.Ill.1992) (court is not authorized to award fees under the Fair Debt Collection Practices Act to a pro se plaintiff who happens to be an attorney, Consumer Credit Protection Act, § 813(a)(2)(A), as amended, 15 U.S.C. § 1692k(a)(2)(A)). As the Seventh Circuit has stated:

> Attorney means attorney. We have no doubt that Blue Cross/Blue Shield would balk at a request for doctor fees from a person who removed his own appendix, or more realistically, a request for dental fees from someone who extracted his own tooth. No one would be entitled to reimbursement for therapist fees for attempts at self-improvement or for finding solutions to one's own problems. Rebuilding and repairing one's own car after an accident might be spiritually rewarding, however, we doubt very much if one's insurance company would honor a demand for mechanic fees. Myriad examples leap to mind that need not be repeated here. Suffice it to say that, although a pro se litigant often times performs exactly the same functions as a lawyer might perform in representing a client, without a degree and admission to the bar a pro se litigant is not entitled to collect attorney fees.

*DeBold v. Stimson,* 735 F.2d 1037, 1042–43 (7th Cir.1984) (footnotes omitted) (pro se litigant denied attorney's fees under Freedom of Information Act). The fact, however, that a pro se litigant is not entitled to attorney's fees, does not mean that he is not entitled to some form of compensation for his adversary's misconduct. The pro se litigant should be allowed his "litigation costs reasonably incurred." *Id.* at 1043.

Litigation costs reasonably incurred appear to mean reimbursement costs. *Id.* One court has expanded the definition to include the litigant's approximate wages lost in preparing his case. *See In re Williamson,* 181 B.R. 403, 409 (Bankr.W.D.Mo.1995) (no attorney's fees awarded but debtor awarded $200.00 in litigation costs after testifying that he spent approximately 30 hours in prepara-

tion for the trial, which they compensate him in his regular employment at the rate of $7.00 per hour, and that he also incurred expenses for approximately 70 photocopies). However, this result appears to be an exception.

### D. *Punitive Damages*

 Although a willful violation of the discharge injunction is an intentional tort, the Seventh Circuit has aptly noted in other contexts, equally applicable here, that that fact does not automatically authorize the award of punitive damages. *See, e.g., Micro Data Base Sys., Inc., v. Dharma Sys., Inc.*, 148 F.3d 649, 653–54 (7th Cir.1998); *Sufrin v. Hosier*, 128 F.3d 594, 598 (7th Cir.1997); *Sokol Crystal Prods., Inc. v. DSC Communications Corp.*, 15 F.3d 1427, 1435 (7th Cir. 1994); *In re Innovative Constr. Sys., Inc.*, 793 F.2d 875, 889 (7th Cir.1986). Corporations can be liable for punitive damages because of acts of their agents if the corporation authorized the doing and the manner of the act of its agent. *See Jannotta v. Subway Sandwich Shops, Inc.*, 125 F.3d 503, 513 (7th Cir.1997).

Frankly, the Court cannot recall a case of a more flagrant violation of the discharge injunction in the over twenty-five years of experience as a practicing attorney and bankruptcy judge. While the first collection action for the small unpaid balance under the reaffirmation agreement might be charitably ascribed to Sears' oversight in failing to see that it was filed and that the Debtor attended the scheduled hearing post-discharge for approval of any reaffirmation agreements, it simply boggles the judicial mind and shocks the conscience of the Court that Sears blatantly compounded that "mistake" by again suing the Debtor over a decade later through the efforts of Cain and Craft. While Cain and Craft unfortunately relied on a false client affidavit in filing the second state court collection action, the record is totally devoid of any facially credible excuse offered by Sears as to why the long discharged remaining balance was the subject of its second collection effort in 1996. Whatever the real reason or "mistake" or "computer error," this

was an outrageous, calculated and clear disregard for the fundamental protection afforded debtors under the Bankruptcy Code.

 The proven compensable damages, if paid by Sears and the other Defendants, would only dispossess them of illgotten gains and leave Sears in no worse position than if it had not violated the law at all. Sears needs proper incentive to discontinue this unlawful practice. Thus, Sears' actions warrant the imposition of sanctions or punitive damages. The Court declines to assess sanctions or punitive damages against Cain or Craft as they took reasonably prompt action to dismiss the second collection action once they verified that the Debtor had filed the 1984 bankruptcy case and received a discharge.

 An attorney is not relieved from liability because of his status as an agent of the creditor. Courts have often sanctioned defendants and their attorneys for violation of the discharge injunction. *E.g., In re Borowski*, 216 B.R. 922, 925 (Bankr.E.D.Mich.1998) (former client and client's counsel violated the discharge injunction and the debtor is entitled to actual damages upon showing of documentation); *Braun v. Champion Credit Union (In re Braun)*, 141 B.R. 133 (Bankr. N.D.Ohio 1992), *amendment denied*, 141 B.R. 144 (Bankr.N.D.Ohio 1992), *aff'd in part, remanded in part*, 152 B.R. 466 (N.D.Ohio 1993) (defendant and defendant's counsel sanctioned $15,000.00 as punitive damages; on appeal, court agreed defendant was in contempt but remanded the case for proper determination of the exact amounts); *In re Simonetti*, 117 B.R. 708 (Bankr.M.D.Fla. 1990) (mortgage holder and its counsel found in contempt and liable for damages by seeking a deficiency judgment in state court on the discharged mortgage liability). *Miller v. Mayer (In re Miller)*, 81 B.R. 669 (Bankr. M.D.Fla.1988), *later proceeding*, 89 B.R. 942 (Bankr.M.D.Fla.1988) (the bankruptcy court determined that the attorney acted willfully and in clear disregard and disrespect of the bankruptcy laws and awarded punitive damages of $2,500.00; however, the creditor is not liable for its attorney's actions because they were for the benefit of a third party not for the creditor). Of the cases cited, only

*Braun* explicitly found that the creditor and its counsel were jointly and severally liable for their actions. 141 B.R. at 143–44.

■ A creditor and its attorney are jointly and severally liable for their violations of the discharge injunction because under general principles of agency law, an agent whose tortious conduct renders the principal liable is also liable for his own tortious acts. *See Buckner v. Atlantic Plant Maintenance, Inc.*, 182 Ill.2d 12, 230 Ill.Dec. 596, 694 N.E.2d 565 (1998); *Fellhauer v. City of Geneva*, 190 Ill.App.3d 592, 601, 137 Ill.Dec. 846, 851, 546 N.E.2d 791, 796 (2d Dist.1989), *rev'd on other grounds*, 142 Ill.2d 495, 154 Ill.Dec. 649, 568 N.E.2d 870 (1991).

■ Relevant factors that may be considered in determining whether punitive damages are appropriate for a creditor's violation of the automatic stay (and equally applicable for violations of the discharge injunction) are: (1) the nature of the creditor's conduct; (2) the creditor's ability to pay damages; (3) the motive of the creditor; and (4) any provocation by the debtor. *Nigro v. Oxford Dev. Co. (In re M.J. Shoearama, Inc.)*, 137 B.R. 182, 190 (Bankr.W.D.Pa.1992). All of these factors have been considered here. Punitive damages are awarded in response to particularly egregious conduct for both punitive and deterrent purposes. *In re Gault*, 136 B.R. 736, 739 (Bankr.E.D.Tenn.1991) (citing *Wagner v. Ivory (In re Wagner)*, 74 B.R. 898, 903–04 (Bankr.E.D.Pa.1987)).

■ The amount of punitive damages awarded should be appropriately tempered by the Debtor's lack of proof of his claimed actual damages. The Defendants' failure to follow § 524(d) should not allow the Debtor to reap an inappropriate windfall award of excessive punitive damages as he requests in light of the uncertain and unproven actual damages he alleged. Illinois law notes that punitive damages may be in proportion to the extent of the injury received, rather than to that actually done, but need not necessarily bear a proportional relation to compensatory damages. *See Gass v. Gamble–Skogmo, Inc.*, 357 F.2d 215, 220–21 (7th Cir.), *cert. denied*, 384 U.S. 943, 86 S.Ct. 1464, 16 L.Ed.2d 541 (1966); *Dempsey v. Holiday Utilities Corp.*, 107 Ill.App.3d 467, 476, 63 Ill.Dec. 45, 52, 437 N.E.2d 694, 701 (5th Dist.1982). The expenses and attorney's fees that a party has incurred may also be considered. *See Ritter v. Ritter*, 381 Ill. 549, 554, 46 N.E.2d 41, 44–45 (1943); *Anvil Inv. Ltd. Partnership v. Thornhill Condominiums, Ltd.*, 85 Ill.App.3d 1108, 1121, 41 Ill.Dec. 147, 156, 407 N.E.2d 645, 654 (1st Dist.1980); *Glass v. Burkett*, 64 Ill.App.3d 676, 683, 21 Ill.Dec. 494, 499, 381 N.E.2d 821, 826 (5th Dist.1978).

Other bankruptcy courts have awarded punitive damages as sanctions for violation of the Bankruptcy Code on various theories. *See In re Arnold*, 206 B.R. 560, 568–69 (Bankr.N.D.Ala.1997) ($15,000.00 in punitive damages amounting to approximately three times actual damages warranted where the creditor acted willfully and maliciously in clear disregard and disrespect of the bankruptcy laws); *Walker v. M & M Dodge, Inc. (In re Walker)*, 180 B.R. 834, 850 (Bankr. W.D.La.1995) (malevolent behavior and clear violation of injunction warrant an award of $10,000.00 in punitive damages); *Miller*, 81 B.R. 669, *later proceeding*, 89 B.R. 942 (the bankruptcy court determined that the attorney acted willfully and in clear disregard and disrespect of the bankruptcy laws and awarded punitive damages of $2,500.00); *see also In re Kamps*, 217 B.R. 836, 840 (Bankr. C.D.Cal.1998) (any violation of the discharge injunction is punishable by damages, including punitive damages, and criminal contempt of court); *Owen v. Treadway (In re Owen)*, 169 B.R. 261, 263 (Bankr.D.Me.1994) (malevolent intent warrants punitive damages but defendant only plead willful violations of the injunction).

However, the courts that have awarded punitive sanctions for violations of the discharge injunction require actions taken with either a malevolent intent or a clear disregard and disrespect of the bankruptcy laws and that it is not sufficient to merely show that the actions were deliberate. *See Arnold*, 206 B.R. at 568–69; *Walker*, 180 B.R. at 850. Court awards for punitive damages vary. In *BMW of North America, Inc. v. Gore*, 517 U.S. 559, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996), the Supreme Court refused to establish a mathematical formula for determining punitive damages. *Id.* at 582–83, 116 S.Ct. at 1602–03. Instead, the Court stated that "a general concern of reasonableness ... properly enters into the constitu-

**232**

tional calculus." *Id.* at 583, 116 S.Ct. at 1602 (citations omitted). However, the Court suggested that an award of four to ten times the amount of compensatory damages may be appropriate depending upon the circumstances in each case. *Id.* at 580–81, 116 S.Ct. at 1601–02.

The upper end of that suggested range is appropriate here. The Court fixes punitive damages at $10,000.00 (approximately 10 times the awardable actual damages) as the appropriate amount to award the Debtor and to deter Sears from future variants on the conduct and pattern of disregard of the bankruptcy reaffirmation process it displayed in this matter.

## IV. *CONCLUSION*

Accordingly, the Court awards the Debtor a judgment for his actual damages in the total sum of $1,015.84, plus taxable costs and interest against all Defendants, jointly and severally. In addition, the Court further awards the Debtor $10,000.00 in punitive damages as a sanction pursuant to 11 U.S.C. § 105 against Sears.

This Opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. A separate order shall be entered pursuant to Federal Rule of Bankruptcy Procedure 9021.